FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>*Plaintiff-Appellee*,<br><br>v.<br><br>ALEJANDRO AGUILAR DIAZ,<br>*Defendant-Appellant*. | No. 16-50102<br><br>D.C. No.<br>3:15-cr-02484-BEN-1<br><br><br>OPINION |

Appeal from the United States District Court
for the Southern District of California
Roger T. Benitez, District Judge, Presiding

Argued and Submitted October 3, 2017
Pasadena, California

Filed March 9, 2018

Before: Susan P. Graber, Mary H. Murguia,
and Morgan Christen, Circuit Judges.

Opinion by Judge Christen

## SUMMARY[*]

### Criminal Law

The panel vacated a sentence and remanded for re-sentencing in a case in which the district court denied the defendant, who pleaded guilty to importation of cocaine and heroin, a minor-role reduction pursuant to U.S.S.G. § 3B1.2(b).

Rejecting the defendant's argument that the district court erred because it did not consider or mention the five factors listed in § 3B1.2 cmt. n.3(C) and failed to mention other factors it did consider, the panel explained that the district court was not obligated to tick off the factors on the record. The panel had no trouble determining from the sentencing memoranda and the transcript of the sentencing hearing that the district court was well aware of the factors added by Sentencing Guidelines Amendment 794.

The panel concluded that Amendment 794 did not change the size of the appropriate comparison group—it remains impermissible to compare a defendant's conduct to that of the hypothetical average participant—but Amendment 794 makes clear that when a defendant knows little about the scope and structure of the criminal enterprise in which he was involved, that fact weighs in favor of granting a minor-role adjustment.

The panel held that to the extent the district court's reasoning reflects reliance on courier conduct as dispositive

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

of the defendant's eligibility for a minor-role reduction, it was error.

Recognizing that the district court has considerable latitude in ruling on minor-role adjustments, the panel concluded that on this record it must remand for re-sentencing because the district court adopted with little elaboration the government's argument, which included an incorrect interpretation of § 3B1.2 and Amendment 794, where there was no evidence that the defendant had a proprietary interest in the outcome of the operation or otherwise stood to benefit more than minimally, and where the defendant had a limited understanding of the overall scope and structure of the criminal operation.

---

**COUNSEL**

Samuel L. Eilers (argued), Federal Defenders of San Diego, Inc., San Diego, California, for Defendant-Appellant.

Emily J. Keifer (argued), Assistant United States Attorney; Laura E. Duffy, United States Attorney;  Helen H. Hong, Assistant United States Attorney, Chief, Appellate Section, Criminal Division; United States Attorney's Office, San Diego, California; for Plaintiff-Appellee.

---

**OPINION**

CHRISTEN, Circuit Judge:

## I. INTRODUCTION

Defendant Alejandro Aguilar Diaz pleaded guilty to importation of cocaine and heroin, in violation of 21 U.S.C. §§ 952 and 960. He appeals the district court's denial of a minor-role reduction for his sentence pursuant to United States Sentencing Guideline ("U.S.S.G.") § 3B1.2(b), arguing that the district court erred by refusing to consider all likely participants in the subject drug trafficking organization, erred by not sufficiently considering the factors articulated by Amendment 794 to the Sentencing Guideline, and abused its discretion when balancing the factors. We have jurisdiction under 28 U.S.C. § 1291, and we vacate and remand for re-sentencing.

## II. BACKGROUND

Alejandro Aguilar Diaz, a 28-year-old legal resident of Tijuana, Mexico, was arrested on August 27, 2015, when crossing into the United States and charged with the importation of 10.68 kilograms of cocaine and 3.6 kilograms of heroin. On October 22, 2015, Aguilar Diaz agreed to plead guilty to two counts of drug importation in exchange for a favorable sentencing recommendation from the government.

After his arrest, Aguilar Diaz told authorities that he had agreed to transport drugs, which he believed to be marijuana, to an unknown location in the United States. He explained that he was at a party with a friend, Hector Rodriguez, when they were approached by an individual named Peter and

asked if they would be willing to smuggle drugs across the border because they both had border-crossing cards. They agreed, and Aguilar Diaz accompanied Rodriguez on two crossings. The first was a practice run; Aguilar Diaz and Rodriguez drove separate cars and neither car carried drugs. The purpose of the first trip was for Aguilar Diaz to show Rodriguez how to cross the border in a vehicle. Only Rodriguez attempted to smuggle drugs into the United States on the second crossing but, because Rodriguez was nervous, Aguilar Diaz agreed to go along in a separate car in exchange for $200. Rodriguez was arrested on the second crossing. When Aguilar Diaz reported Rodriguez's arrest to Peter, Peter told him that he owed a debt for the confiscated drugs and that he would be paid only $1,000 for making an additional smuggling trip, instead of the $2,000 originally promised. Aguilar Diaz then allowed Peter to hide drugs in his car, tried to cross the border a third time, and he, too, was arrested. Eventually, Aguilar Diaz pleaded guilty to two counts of drug importation in exchange for the government's favorable sentencing recommendation. The pre-sentence report acknowledged that Aguilar Diaz cooperated after his arrest and during the subsequent investigation, and did not challenge his statement that he had only been involved in two prior crossings. It was undisputed that Aguilar Diaz has no prior criminal history.

In preparation for sentencing, Aguilar Diaz submitted a memorandum to the district court detailing his arguments in support of a minor-role adjustment pursuant to the § 3B1.2(b) Guideline. The memorandum argued that drug couriers play minor roles in drug trafficking organizations and addressed five factors the Sentencing Commission articulated when it

clarified § 3B1.2 with Amendment 794.[1]  Aguilar Diaz argued that all five of the recently enumerated factors weighed in favor of granting a minor-role adjustment in his case.  The government disagreed and filed a sentencing summary chart that did not include a recommendation for a minor-role adjustment.

At Aguilar Diaz's sentencing hearing, the district court heard extensive argument from both parties about whether to grant the minor-role adjustment.  The government cited Aguilar Diaz's involvement in multiple border crossings (the two crossings with Rodriguez and the crossing leading to Aguilar Diaz's arrest) to support its position that he should be considered a trusted courier, and urged the court to conclude that Aguilar Diaz was not eligible for the adjustment because he had not met his burden of demonstrating that he was substantially less culpable than the average participant.  The defense argued the court should consider other "unknown" individuals who "have to exist in order for a drug trafficking organization to function," when deciding whether Aguilar Diaz had a minor role in the criminal enterprise.  The district court responded that Ninth Circuit precedent precluded consideration of "hypothetical or unknown participants," and ruled that Rodriguez and Peter were the only other participants for comparison purposes.

In support of his contention that the Amendment 794 factors weighed in his favor, Aguilar Diaz argued: (1) the $1,000 he stood to receive for transporting the drugs was very little in comparison to the street value of the drugs ($270,000); (2) this was the first time he actually tried to

---

[1]  Amendment 794 to § 3B1.2 became effective on November 1, 2015.

smuggle drugs; (3) he had limited knowledge of other participants in the criminal enterprise; and (4) his mistaken understanding about the type and quantity of the drugs he was carrying demonstrated that he knew very little about the scope and structure of the smuggling operation. For its part, the government argued that because Aguilar Diaz had experience crossing the border and Rodriguez did not, his presence and familiarity with the process encouraged and facilitated Rodriguez's smuggling trip. The government further argued that Aguilar Diaz was not substantially less culpable than the average participant because he assumed multiple roles by acting as a scout for Rodriguez's unsuccessful attempt and as a courier himself. The government pointed out that Aguilar Diaz was the driver and registered owner of the vehicle he used, that he attempted to traffic a large and valuable quantity of drugs, and that he agreed to accept money in exchange for the crossing. The district court adopted the government's argument with little elaboration and denied the minor-role adjustment. Aguilar Diaz was sentenced to serve 46 months in prison.

## III. STANDARDS OF REVIEW

"[W]e review the district court's identification of the correct legal standard *de novo* and the district court's factual findings for clear error." *United States v. Gasca-Ruiz*, 852 F.3d 1167, 1170 (9th Cir.) (en banc), *cert. denied*, 1385 S. Ct. 229 (2017). "[A] district court's application of the Sentencing Guidelines to the facts of a given case should be reviewed for abuse of discretion." *Id.*

## IV.  ANALYSIS

Section 3B1.2(b) of the United States Sentencing Guidelines provides for a two-level reduction in a defendant's sentence "[i]f the defendant was a minor participant in any criminal activity."**[2]**  "'The defendant bears the burden of proving that he [or she] is entitled to a downward adjustment based on his [or her] role in the offense.'"  *United States v. Cantrell*, 433 F.3d 1269, 1282 (9th Cir. 2006) (alteration in original) (quoting *United States v. Awad*, 371 F.3d 583, 591 (9th Cir. 2004)).  We have long held that in determining whether to grant a minor-role reduction, the correct inquiry is whether the defendant was "'*substantially less culpable* than the average participant'" in the charged criminal activity.  *United States v. Rodriguez-Castro*, 641 F.3d 1189, 1193 (9th Cir. 2011) (quoting U.S.S.G. § 3B1.2 cmt. n.3(A)).  It is also well established that a district court need not tick off sentencing factors to show that it considered them, *see United States v. Carty*, 520 F.3d 984, 992 (9th Cir. 2008) (en banc), because "[w]e assume that the district court knows and applies the law correctly," *United States v. Cervantes-Valenzuela*, 931 F.2d 27, 29 (9th Cir. 1991) (per curiam).  *See also United States v. Diaz-Argueta*, 564 F.3d 1047, 1052 (9th Cir. 2009).

Prior to Amendment 794, a circuit split developed concerning the proper interpretation of "the average

---

**[2]**  The Guideline provides: "[b]ased on the defendant's role in the offense, decrease the offense level as follows: (a) If the defendant was a minimal participant in any criminal activity, decrease by 4 levels.  (b) If the defendant was a minor participant in any criminal activity, decrease by 2 levels.  In cases falling between (a) and (b), decrease by 3 levels."  U.S.S.G. § 3B1.2.

participant" in the context of the minor-role sentencing Guideline. U.S.S.G. App. C. Amend. 794.**[3]** The First and Second Circuits allowed defendants to compare their culpability to that of their co-participants and to other persons participating in similar crimes—hypothetical typical offenders. *See id.* In our circuit and in the Seventh Circuit, the appropriate comparison was between the defendant and other participants in the same criminal scheme. *See id.* Amendment 794 resolved the circuit split in favor of the latter approach when it became effective on November 1, 2015. U.S.S.G. App. C. Amend. 794.

Amendment 794 also enumerated a list of factors for courts to consider when deciding whether to grant a minor-role adjustment:

> In determining whether to apply subsection (a) or (b), or an intermediate adjustment, the court should consider the following non-exhaustive list of factors: (i) the degree to which the defendant understood the scope and structure of the criminal activity; (ii) the degree to which the defendant participated in planning or organizing the criminal activity; (iii) the degree to which the defendant exercised decision-making authority or influenced the exercise of decision-making authority; (iv) the nature and extent of the defendant's participation in the commission of

---

**[3]** *Compare United States v. Santos*, 357 F.3d 136, 142 (1st Cir. 2004), *and United States v. Rahman*, 189 F.3d 88, 159 (2d Cir. 1999) (per curiam), *with Cantrell*, 433 F.3d at 1283 (9th Cir. 2006), *and United States v. DePriest*, 6 F.3d 1201, 1214 (7th Cir. 1993).

the criminal activity, including the acts the defendant performed and the responsibility and discretion the defendant had in performing those acts; (v) the degree to which the defendant stood to benefit from the criminal activity.

U.S.S.G. § 3B1.2 cmt. n.3(C). In stating its purpose for the Amendment, the Sentencing Commission explained that minor-role adjustments had been "applied inconsistently and more sparingly than the Commission intended," and that it intended to address caselaw that might discourage courts from applying minor-role adjustments.[4] U.S.S.G. App. C. Amend. 794. We have since observed that, as clarified, § 3B1.2 provides "'a defendant who does not have a proprietary interest in the criminal activity and who is simply being paid to perform certain tasks should be considered' for the reduction, and 'the fact that a defendant performs an essential or indispensable role in the criminal activity is not determinative'" of whether a minor-role adjustment should be granted. *United States v. Quintero-Leyva*, 823 F.3d 519, 523 (9th Cir. 2016) (brackets omitted) (quoting U.S.S.G. § 3B1.2 cmt. n.3(C)).

*Quintero-Leyva* reviewed a challenge to a sentence imposed before Amendment 794's effective date and addressed whether the factors identified in Amendment 794 should be given retroactive effect. There, the defendant pleaded guilty to importation of methamphetamine and sought a minor-role adjustment because he allegedly had

---

[4] "This amendment . . . addresses a circuit conflict and other caselaw that may be discouraging courts from applying the adjustment in otherwise appropriate circumstances." U.S.S.G. App. C. Amend. 794.

limited knowledge of what he was transporting and no prior history of trafficking drugs across the border. *Id.* at 521. We held that because Amendment 794 was meant to clarify an existing Guideline, it applied retroactively to cases on direct appeal. *Id.* at 523. Further, we recognized that Amendment 794 settled the circuit split regarding which participants could be considered for comparison purposes and established that a defendant's conduct should be assessed against that of other participants in his or her own criminal scheme, rather than being compared to that of the hypothetical average participant in similar criminal activity. *Id.* We remanded Quintero-Leyva's case to the district court for re-sentencing because it was unclear whether the sentencing court had considered the factors identified by Amendment 794. *See id.* at 523–24.

In the wake of Amendment 794 and *Quintero-Leyva*, if the denial of a minor-role adjustment is challenged and the defendant's sentencing occurred after the Amendment's effective date—as is the case here—our caselaw requires that we assume the district judge knew the law and understood his or her obligation to consider all of the sentencing factors, and we invoke the well-established presumption that the district court need not recite each sentencing factor to show it has considered them. *See Carty*, 520 F.3d at 992. But in deciding these post-Amendment appeals, we also recognize the Sentencing Commission's statement that minor-role adjustments were being applied more sparingly than the Commission intended and its admonition that, in Amendment 794, the Commission did more than merely adopt the Ninth Circuit's side of the previous circuit split concerning consideration of hypothetical average participants. Going forward, the assessment of a defendant's eligibility for a minor-role adjustment must include consideration of the factors identified by the Amendment, not merely the

benchmarks established by our caselaw that pre-dates Amendment 794's effective date.

Turning to this appeal, Aguilar Diaz argues that the district court erred because it did not consider or mention the five factors listed in § 3B1.2 cmt. n.3(C), and failed to mention other factors it did consider when it concluded that Aguilar Diaz did not qualify for a minor-role adjustment. But the district court was not obligated to tick off the factors on the record to show that it considered them, *see Carty*, 520 F.3d at 992, and we have no trouble determining from the sentencing memoranda and the transcript of the sentencing hearing that the district court was well aware of the factors added by Amendment 794. The factors were thoroughly enumerated in the defendant's sentencing memorandum, and defense counsel pressed its points in argument to the court.

Next, Aguilar Diaz argues that the district court erred by refusing to consider all likely participants in the drug smuggling operation in which he was involved because the court considered only Rodriguez and Peter. In *United States v. Rojas-Millan* we held that, when measuring a defendant's culpability relative to that of other participants, district courts must compare the defendant's involvement to that of all likely participants in the criminal scheme for whom there is sufficient evidence of their existence and participation. 234 F.3d 464, 473 (9th Cir. 2000). The question implied by Aguilar Diaz's appeal is whether this pre-existing caselaw is inconsistent with the guidance provided by Amendment 794. We conclude that it is not. Although Amendment 794 does not alter defendant's burden to show that the nature of his participation rendered him substantially less culpable than other participants, the Amendment recognizes that a true minor-role participant need not be privy to every detail about

the roles played by others in the scheme. This is evident from one of the factors added by Amendment 794: "the degree to which the defendant understood the scope and structure of the criminal activity." U.S.S.G. § 3B1.2 cmt. n.3(C). The Amendment recognizes the likelihood that a true minor participant may be unable to identify other participants with specificity. This is consistent with our pre-existing caselaw.

Prior to Amendment 794, *Rojas-Millan* acknowledged that a defendant seeking a minor-role reduction need not identify other participants precisely. *Rojas-Millan* held the district court should have considered other actors who were identified only by location and role—the Los Angeles supplier and Reno distributor. 234 F.3d at 473–74. Our caselaw has never required a defendant to identify other participants by name; doing so is only one way a defendant can establish the existence of other participants in a criminal scheme. *See id.* Identifying the locations of other individuals and the roles they actually served may be sufficient for the defendant to meet his burden. We conclude that Amendment 794 did not change the size of the appropriate comparison group—it remains impermissible to compare a defendant's conduct to that of the hypothetical average participant—but Amendment 794 makes clear that when a defendant knows little about the scope and structure of the criminal enterprise in which he was involved, that fact weighs in favor of granting a minor-role adjustment.

Separately, Aguilar Diaz argues that he *did* demonstrate the likely existence and participation of others, because of the value of the drugs, the likelihood that someone supplied the drugs to Peter and helped him load and conceal the drugs in Aguilar Diaz's car, and because someone must have existed in the United States to accept delivery. The district court

considered this evidence, but it was not persuaded that Aguilar Diaz had done more than speculate that other participants must have existed. The district court went on to conclude that even in comparison to the people who "create the drugs, who cut the drugs, who load the drugs, who then unload the drugs, who sell the drugs on the streets, who . . . generate the money and send the money back to Mexico," Aguilar Diaz's role of scouting and acting as a courier to smuggle a large amount of drugs across the border was not minor. To the extent the district court's reasoning reflects reliance on courier conduct as dispositive of Aguilar Diaz's eligibility for a minor-role reduction, it was error. Amendment 794 clarified that the performance of an essential role—here, the role of smuggling drugs across the border—is not dispositive. *See Quintero-Leyva*, 823 F.3d at 523.

Finally, Aguilar Diaz argues that the district court abused its discretion because, collectively, the factors weigh in his favor. We agree that several of the Amendment 794 factors do weigh in Aguilar Diaz's favor. *See* U.S.S.G. § 3B1.2 cmt. n. 3(C). For example, it is not contested that he did not know the type or quantity of the drugs hidden in his vehicle, suggesting he did not play a significant role in planning or organizing. That Aguilar Diaz only knew two other participants limits the size of the comparison group, but it also cuts in his favor because it tends to show that he had minimal knowledge regarding the scope and structure of the criminal operation. It is also undisputed that Aguilar Diaz was to receive a set fee of $1,000 and had no ownership interest or other stake in the outcome of the trafficking operation. Accordingly, he is among the offenders the Sentencing Commission described as not having a "*proprietary* interest in the criminal activity and who is simply being paid to perform certain tasks." *Quintero-Leyva*,

823 F.3d at 523 (emphasis added).  This factor also weighs in favor of granting the adjustment.

Although the district court has considerable latitude in ruling on minor-role adjustments, *see id.*, on this record we must remand for re-sentencing because the decision to deny the adjustment rested on incorrect interpretations of the § 3B1.2 Guideline and Amendment 794.  The difficulty is that the district court adopted the government's argument with little elaboration, and the government's argument included an incorrect interpretation of § 3B1.2  and Amendment 794.  First, the government relied on the fact that Aguilar Diaz agreed to accept money in exchange for transporting drugs, but ignored that his compensation was relatively modest and fixed.  There was no evidence that Aguilar Diaz had a proprietary interest in the outcome of the operation or otherwise stood to benefit more than minimally.  Second, though the government correctly identified Peter and Rodriguez as the comparison group, it did not account for Aguilar Diaz's limited understanding of the overall "scope and structure of the criminal operation."

Because we cannot determine whether the district court would have granted a minor-role adjustment had these factors been properly applied, we vacate Aguilar Diaz's sentence and remand for re-sentencing.

**VACATED AND REMANDED.**