NOT FOR PUBLICATION

FILED

UNITED STATES COURT OF APPEALS

MAY 26 2020

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 19-10044 |
| Plaintiff-Appellee, | D.C. No. 1:16-cr-00069-LJO-SKO-8 |
| v. | MEMORANDUM* |
| KIANDRE JOHNSON, | |
| Defendant-Appellant. | |

Appeal from the United States District Court
for the Eastern District of California
Lawrence O'Neill, District Judge, Presiding

Submitted May 13, 2020
San Francisco, California

Before: WALLACE and R. NELSON, Circuit Judges, and GWIN,** District Judge.

Defendant Kiandre Johnson appeals from the district court's judgment. He challenges the 138-month sentence imposed after his guilty-plea convictions for conspiracy to commit murder in aid of racketeering and use of a facility of

---

* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

** The Honorable James S. Gwin, United States District Judge for the Northern District of Ohio, sitting by designation.

interstate commerce to promote prostitution, in violation of 18 U.S.C. §§ 1952(a), 1959(a)(5).  We have jurisdiction under 28 U.S.C. § 1291.  We affirm in part, vacate in part, and remand for the district court to give more explicit explanation of its decision rejecting Johnson's argument that he should receive a minor role sentencing adjustment.

Johnson first argues that a Government expert offered implicitly racist expert testimony at Johnson's sentencing hearing.  Johnson contends that this testimony impermissibly "tainted" the entire proceeding.  He asks for a resentencing.

The Government called the expert—a Fresno detective who specialized in African American street gangs—to testify that Defendant Johnson was a gang member.  The expert testified that various evidence, including photographs and music videos, showed Johnson's gang membership.

During cross examination, Johnson's counsel asked whether the expert knew of Johnson's familial relationships with the purported gang members in the photographs, and the expert answered with a stereotype:

> Q. Is part of your job to know what the relationships are,
> especially since we're going to talk about the people in
> the pictures and what their family relationships might be?
>
> A. It's very difficult to know that sometimes.  Sometimes
> you have individuals that where they'll have the same
> father, but their father may have had children with five or
> six different women and there could be 28 to 30 kids that

have been produced by one male. So you have several individuals that are related and sometimes they don't even know their relation. They just know that they're somehow related.

At the sentencing hearing, Johnson did not object that the expert's testimony "tainted" the entire proceeding. We therefore review for plain error. *United States v. Hammons*, 558 F.3d 1100, 1103 (9th Cir. 2009).

The Court rejects Johnson's argument that implicitly racially biased expert sentencing hearing testimony always results in an infirm sentence. Johnson cites no case in which this Court or any other has vacated a sentence due to an expert's implicit racial bias. Johnson cites *Buck v. Davis*, 137 S. Ct. 759 (2017) for his expansive proposition, but the *Buck* holding is not so broad.

In that case, Buck had already been convicted of murder, and at the death penalty phase, the jury was tasked with deciding whether there was a probability that Buck would continue to commit criminal acts of violence. *Id.* at 768. During that phase, Buck's own expert witness opined that the fact that Buck was black carried with it an "increased probability" of future violence. *Id.* The Supreme Court determined that Buck received ineffective assistance of counsel because of a "perfect storm" in which the expert's "opinion coincided precisely with a particularly noxious strain of racial prejudice, which itself coincided precisely with the central question at sentencing." *Id.* at 776.

The instant case is unlike *Buck*. Johnson does not bring an ineffective

assistance claim; in fact, his prejudice argument is unconnected to any asserted constitutional right. This omission alone makes *Buck* distinguishable.

In any event, the instant case's challenged expert testimony substantially differs from the prejudicial testimony in *Buck*. Here, the testimony bore on an only marginally relevant sentencing issue. Indeed, the question the expert addressed— whether Johnson was a gang member—did not impact any Guidelines calculation or the 28 U.S.C. § 3553 factors. Accordingly, Johnson's first argument fails.

Johnson next contends that the district court erred by denying his request for a minor role reduction under U.S.S.G. § 3B1.2. In his sentencing memorandum, Johnson requested a three-level minor role reduction. At the sentencing hearing, the district court denied Johnson's request for a minor role reduction, giving only the following explanation: "On the minor role, based on what's before me, I cannot make a finding of minor role, so that objection is overruled."

On appeal, Johnson claims the district court failed to consider the U.S.S.G. § 3B1.2 factors. *See* U.S.S.G. § 3B1.2 cmt. n.3(C) (2015).

We review the district court's interpretation of the Guidelines de novo and its application of the Guidelines to the facts for abuse of discretion. *See United States v. Gasca-Ruiz*, 852 F.3d 1167, 1170-71 (9th Cir. 2017) (en banc). "[A] district court need not tick off sentencing factors to show that it considered them[.]" *United States v. Diaz*, 884 F.3d 911, 914 (9th Cir. 2018). However, in

this case, the district court denial did not reflect that the court had considered the relevant § 3B1.2 factors, and the factors do not otherwise appear in the record. Indeed, the district court offered essentially no explanation for his minor role adjustment denial.

Therefore, we vacate Johnson's sentence and remand for consideration of the minor role sentencing factors.

**AFFIRMED in part, VACATED in part and REMANDED for resentencing.**