**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, Plaintiff-Appellee, v. VICTOR ARMANDO ACEVEDO, Defendant-Appellant. | No. 20-50007 D.C. No. 3:19-cr-02180-LAB-1 MEMORANDUM* |

Appeal from the United States District Court
for the Southern District of California
Larry A. Burns, District Judge, Presiding

Argued and Submitted March 3, 2021
Pasadena, California

Before:  HIGGINSON,** HURWITZ, and COLLINS, Circuit Judges.

Memorandum joined by Judge HURWITZ and Judge COLLINS;
Partial Concurrence and Partial Dissent by Judge HIGGINSON

Victor Acevedo appeals the 78-month sentence imposed after he pleaded

guilty to conspiring to import methamphetamine into the United States in violation

of 21 U.S.C. §§ 952, 960, 963  We have jurisdiction pursuant to 28 U.S.C. § 1291

---

* This disposition is not appropriate for publication and is not precedent except as
provided by Ninth Circuit Rule 36-3.

** The Honorable Stephen A. Higginson, United States Circuit Judge for the U.S.
Court of Appeals for the Fifth Circuit, sitting by designation.

and 18 U.S.C. § 3742(a). We remand with limited instructions to amend the judgment, but we otherwise affirm.

1. Acevedo argues that the district court committed plain error by making a factual mistake in rejecting Acevedo's request to consider his young age and immaturity as mitigating factors in determining his sentence. Although the record does suggest that the district court mistakenly thought that Acevedo worked twice as many hours and consequently earned twice as much as was actually the case, Acevedo has failed to show that any such error "affected the outcome of the district court proceedings," much less that it "'seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings.'" *United States v. Olano*, 507 U.S. 725, 734, 736 (1993) (citation omitted). The district court's overall comments confirm that its conclusion that Acevedo should not be considered young and immature was based on a number of factors, including that he was in his early 20s, he was working, and he had taken on "family responsibility to help support his mother." The record does not support the inference that any miscalculation as to the number of hours and total pay would have altered the court's assessment that Acevedo was doing "things a mature person would do." Moreover, even if any such correction might have caused the court to consider Acevedo somewhat less mature, Acevedo has not shown that any marginal difference in mitigating value based on that asserted lesser maturity would have

2

altered the court's overall assessment of the relevant sentencing factors.

2.  Acevedo argues that the district court erred by rejecting his request for a minor-role reduction under U.S.S.G. § 3B1.2.  We review the "'district court's identification of the correct legal standard *de novo*'" and its "'application of the Sentencing Guidelines to the facts of a given case . . . for abuse of discretion.'" *United States v. Diaz*, 884 F.3d 911, 914 (9th Cir. 2018) (citations omitted).  We find no prejudicial error.

In addressing whether a role reduction was warranted, the district court recited the correct legal standards, and specifically acknowledged that, in applying those standards, the court was "not to hypothesize and compare [the defendant] to *other* importing cases" (emphasis added).  *See Diaz*, 884 F.3d at 915 (holding that, in connection with a role adjustment under § 3B1.2, the "appropriate comparison was between the defendant and other participants in the same criminal scheme" and not a comparison to "hypothetical typical offenders").  Acevedo asserts that the district court nonetheless violated *Diaz*'s holding by referencing what it had learned about drug-importation schemes from handling "over a thousand of these cases."  We disagree.  In declining to make an adjustment for minor role, the district court properly compared Acevedo to the "known or likely participants" in *this* particular scheme, and the court merely relied on its general knowledge of drug-importation organizations in order to draw inferences about Acevedo's

relative role vis-à-vis the other participants in *this* conspiracy.  *Diaz* requires that the ultimate comparison of roles be based on the participants in the particular scheme before the court, but that does not mean that only scheme-specific *evidence* may be considered in making that scheme-specific comparison.

We also reject Acevedo's contention that the district court erred in concluding that one of the factors that should be considered in assessing role—*viz*., "the degree to which the defendant stood to benefit from the criminal activity"— did not favor a minor-role adjustment here.  *See* U.S.S.G. § 3B1.2 cmt. n.3(C)(v).  At sentencing, Acevedo argued that this factor weighed in favor of a downward adjustment because he had "no ownership in the drugs whatsoever, no decision-making authority, no proprietary interest in the drugs."  *See id*. n.3(C) ("For example, a defendant who does not have a proprietary interest in the criminal activity and who is simply being paid to perform certain tasks should be considered for an adjustment under this guideline.").  He contends that the court committed legal error, and improperly weighed this factor, by stating that the lack of a "proprietary interest" was a "straw man factor" that was entitled to "very little weight" in the context of drug importation cases.  We again disagree.  By stating that a defendant lacking a "proprietary interest" in the "criminal activity" should be "considered" for a downward adjustment, the Guideline commentary does not *require* the district court to conclude that the absence of such a proprietary interest

4

actually supports making such an adjustment in the context of any particular type of offense or any particular case. The fact that *Diaz* stated that, in the context of that case, the lack of a proprietary interest "weigh[ed] in favor of granting the adjustment" does not mean that district courts lack the discretion to weigh that consideration differently in another case. 884 F.3d at 917–18. Here, the district court permissibly concluded that, given the benefits that Acevedo would receive from his unlawful importation (including a $4,000 payment), the importance of the role of the actual importer who crosses the border and has to interface with inspectors, and the other relevant factors in assessing role, the fact that Acevedo did not personally own the drugs did not make his role "minor" vis-à-vis others involved in the scheme.

3. We reject Acevedo's argument that the district court abused its discretion by expressing doubts about Acevedo's professed lack of knowledge that drugs were in the vehicle that he drove across the border, after the court had declined an opportunity to question him about that subject. "Where a fact relevant to sentencing is disputed, the district court must provide the parties a 'reasonable opportunity' to present information to the court." *United States v. Real-Hernandez*, 90 F.3d 356, 362 (9th Cir. 1996) (quoting FED. R. CRIM. P. 32(c)(3)(A)). Here, Acevedo's counsel only inquired if *the court* would "like to question him" about the subject and never argued that the court was *obligated* to

5

hear the testimony or that Acevedo affirmatively wanted to present it. The court thus did not deprive Acevedo of an opportunity to present his testimony to the court. *Cf. Oshodi v. Holder*, 729 F.3d 883, 887–90 (9th Cir. 2013) (holding that immigration judge erred by "refusing to allow" alien to testify about the abuse recounted in his asylum application and then finding him not credible). Nor did the court abuse its discretion in concluding that, in the context of this case, it was not necessary to hear live testimony on this point when Acevedo had not insisted on it. Given that, even under his own version of events, Acevedo had agreed to transport drugs and merely claimed that he did not know that the drugs had actually been loaded into the vehicle on the *particular* trip for which he was arrested, the court could reasonably conclude that, if Acevedo was not insisting on presenting live testimony, there was little marginal value in doing so. Further, although the district court did not give Acevedo's assertion "great weight," the court did not state that it was given no weight. We find no abuse of discretion.

4. Acevedo argues that the district court's written judgment erroneously imposed a standard condition of supervised release that directly conflicts with a special condition pronounced orally at the sentencing hearing. "In cases where there is a direct conflict between an unambiguous oral pronouncement of sentence and the written judgment and commitment, [we have] uniformly held that the oral pronouncement . . . must control." *United States v. Munoz-Dela Rosa*, 495 F.2d

6

253, 256 (9th Cir. 1974). Here, the district court orally stated that Acevedo would be required to "seek and maintain full-time employment, or schooling, or some combination of schooling and employment that keeps him occupied full time." That condition was properly captured in Special Condition No. 5 in the written judgment, which stated that Acevedo was to "[s]eek and maintain full time employment and/or schooling or a combination of both." But the judgment also included a standard condition that directed Acevedo to "work full time" *without* mentioning that schooling could satisfy that requirement in whole or in part. Because the standard condition's failure to mention that point conflicted with the oral condition, we remand to the district court with limited instructions to add the following sentence to the end of Standard Condition No. 7: "As an alternative to employment as described in this condition, the defendant may seek and maintain full time schooling or a combination of employment and schooling." *See United States v. Goddard*, 537 F.3d 1087, 1093 (9th Cir. 2008) (remanding with limiting instructions to make specific ministerial changes in the wording of certain supervised-release conditions in order to "resolve differences between the oral sentence and the written judgment").

5. We reject Acevedo's argument that the district court erred by including in the written judgment four mandatory conditions and 12 other standard conditions that had not been pronounced orally at the sentencing hearing. Absent a

conflicting oral pronouncement (such as we have found with respect to Standard Condition No. 7), the "imposition of [the] mandatory and standard conditions" set forth in U.S.S.G. § 5D1.3 "is deemed to be implicit in an oral sentence imposing supervised release." *United States v. Napier*, 463 F.3d 1040, 1043 (9th Cir. 2006).

**AFFIRMED in part and REMANDED with limited instructions to amend Standard Condition No. 7 in the written judgment as stated.**

*United States v. Acevedo*, 20-50007

HIGGINSON, Circuit Judge, concurring in part and dissenting in part:

I concur in all but Section 5 of the memorandum disposition, dissenting from the proposition that discretionary supervised release conditions in the Sentencing Guidelines may be deemed implicit in an oral pronouncement of sentence when they appear for the first time in written judgment. *See United States v. Reyes*, No. 20-50016, slip op. at 21, __ F.4th ___ (9th Cir. 2021) (Higginson, J., concurring).