NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

DEC 27 2021

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITED STATES OF AMERICA, Plaintiff-Appellee, v. SANDRA RODRIGUEZ, Defendant-Appellant. | No. 20-50006 D.C. No. 3:19-cr-03339-LAB-1 MEMORANDUM* |

Appeal from the United States District Court
for the Southern District of California
Larry A. Burns, District Judge, Presiding

Argued and Submitted July 29, 2021
Pasadena, California

Before: M. SMITH and LEE, Circuit Judges, and ROBRENO,** District Judge
Partial Concurrence and Partial Dissent by Judge LEE

Sandra Rodriguez appeals her sentence after pleading guilty to importation of

methamphetamine and heroin, in violation of 21 U.S.C. §§ 952 and 960. She

contends that the district court erred in denying her a minor role reduction under

*        This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

**        The Honorable Eduardo C. Robreno, United States District Judge for
the Eastern District of Pennsylvania, sitting by designation.

United States Sentencing Guideline 3B1.2(b). We conclude that the district court abused its discretion when considering: (1) the degree to which Rodriguez understood the scope and structure of the criminal activity; (2) the degree to which she participated in the planning of the crime; and (3) the degree to which she stood to benefit from the crime. Accordingly, we will vacate Rodriguez's sentence and remand for resentencing.

## I.    FACTUAL AND PROCEDURAL HISTORY

Rodriguez, a former methamphetamine addict and current gambling addict, was recruited by her friend "Martha" to smuggle drugs across the Mexico/U.S. border for Alejandro Ibarra. Ibarra offered Rodriguez $4,000 to smuggle the drugs. After she agreed, Ibarra purchased and registered a vehicle in Rodriguez's name, forging her signature. On the day of the operation, she drove to a location in Tijuana, Mexico where a Hispanic male took the vehicle for a few hours so that the drugs could be loaded into secret compartments. She was then told to drive across the border and give the vehicle to a man called "J5" at a gas station in Fontana, California. A week prior to this trip, Rodriguez had successfully smuggled drugs using this plan. However, on this occasion, Rodriguez was stopped at the border and arrested after 21.06 kilograms of methamphetamine and 2.25 kilograms of heroin were found in the vehicle.

Rodriguez quickly confessed and gave a full statement. She denied knowing the amount or type of drugs she was smuggling or where they were concealed. Her probation officer, the prosecutor, and defense counsel agreed Rodriguez was entitled to a minor role reduction under section 3B1.2(b) of the Sentencing Guidelines. The parties noted that Rodriguez had no decision-making authority or leadership role, her financial gain was minimal, and she knew little of the scope and structure of the broader drug trafficking organization. Defense counsel and the probation officer recommended the district court impose a thirty-six-month sentence. The prosecution recommended forty-six months.

However, the district court denied Rodriguez a minor role reduction and sentenced her to seventy-eight months. In denying the reduction, the district court reviewed, inter alia, the five factors listed in application note 3(C) of the section 3B1.2 commentary and concluded that four of the five factors weighed against the reduction.

The district court prefaced its discussion of the five minor role factors by stating that it thought the reduction was "being applied in a way that was not intended."

Regarding the first minor role reduction factor, "the degree to which the defendant understood the scope and structure of the criminal activity," U.S.S.G. § 3B1.2 cmt. n.3(C)(i), the district court concluded that, while it was "sure, in this

case, the defendant was kept in the dark about" the details of the operation, Rodriguez "did know . . . she was working for an organization that used automobiles registered to the people that were driving them across," and "she knew that the organization would hide drugs in these cars, that she would drive them across. She knew the location she was to go to at the end was J5, who would pick up the drugs, take them out of the car, she'd come back and get paid." The district court found that Rodriguez "certainly" had "an understanding of the scope and structure of the criminal activity [which was] importing drugs into the United States." It provided that, "[i]f you say, well, she didn't know . . . who was at the top of this drug organization, she had no idea where the methamphetamine came from, she didn't know all the players involved, that type of analysis would describe every importer of drugs into the United States." The district court concluded that this "factor doesn't help her."

Concerning the second factor, "the degree to which the defendant participated in planning or organizing the criminal activity," *id.* § 3B1.2 cmt. n.3(C)(ii), the district court noted that Rodriguez "took possession of the vehicle," "was told, drive down and meet somebody in Mexico," turned over the car, knew that "the car [would] be filled with drugs," knew that her "mission [was] to come back and turn it over to someone else [who would] retrieve the drugs," and knew that she would then "get paid." The district court continued, "[a]nd she said, check, check, check,

4

check. I think that makes her part of the plan, don't you?" The district court stated that while Rodriguez "was not the initiator, she didn't come up with the plan, she didn't devise it," she "[o]f course" was "part of the plan" and "was a willing participant in the plan. And there was an incentive for her to be involved." The court further concluded that "[s]he implemented the plan" and "she knew exactly what she was doing. That factor doesn't help her."

Regarding the third factor, "the degree to which the defendant exercised decision-making authority or influenced the exercise of decision-making authority," *id.* § 3B1.2 cmt. n.3(C)(iii), the district court recognized that Rodriguez "didn't exercise decision-making authority," and did not weigh this factor against her.

Regarding the fourth factor, "the nature and extent of the defendant's participation in the commission of the criminal activity, including the acts the defendant performed and the responsibility and discretion the defendant had in performing those acts," *id.* § 3B1.2 cmt. n.3(C)(iv), the district court concluded that Rodriguez's participation in the crime was "extensive" given that she drove the car and had previously smuggled a load of drugs for the same organization.

Concerning the fifth factor, "the degree to which the defendant stood to benefit from the criminal activity," *id.* § 3B1.2 cmt. n.3(C)(v), the district court concluded that "she was going to make another 4,000. She'd already gotten 4,000. $8,000 is not an insubstantial amount for importers of drugs." The district court did

not weigh her payment against the worth of the drugs she smuggled, asserting that "[i]t's a metric, but it's a foolish one. It's an irrational one. Why does it make a difference what the importer is paid versus what the value of the drugs is, I don't get that."

The district court acknowledged that these five factors are not exclusive and also considered the quantity and dangerousness of the drugs at issue. After noting that Rodriguez was smuggling 21.06 kilograms of methamphetamine and 2.25 kilograms of heroin, it concluded "[t]hat's a huge and deadly amount of drugs, and it argues against making a finding that the defendant is in any way or can be characterized in any way minor in this case."

Rodriguez appeals the district court's decision not to apply a minor role reduction, arguing that the district court's allegedly generalized rule of denying the minor role reduction in this and a number of prior cases violates the Due Process and Equal Protection clauses and that, regardless, it also abused its discretion in failing to grant the reduction in her specific case. Given that we conclude the district court abused its discretion in assessing Rodriguez for a minor role reduction, we find it unnecessary to address Rodriguez's broader constitutional claims. *See United States v. Sandoval-Lopez*, 122 F.3d 797, 802 n.9 (9th Cir. 1997) ("We avoid constitutional questions when an alternative basis for disposing of the case presents itself.").

## II.     STANDARD OF REVIEW[1]

In applying the Sentencing Guidelines, we have directed district courts to follow three steps. *United States v. Gasca-Ruiz*, 852 F.3d 1167, 1170 (9th Cir. 2017) (en banc). "First, the district court must identify the correct legal standard . . . ." *Id.* We review this step de novo. *Id.* "Second, the court must find the relevant historical facts, meaning the facts that answer primarily 'what happened' types of questions . . . ." *Id.* We review this step for clear error. *Id.* "[T]hird, the court must apply the appropriate guideline to the facts of the case—that is, decide whether the set of historical facts as found satisfies the governing legal standard." *Id.* We generally review this final step for an abuse of discretion. *Id.* at 1171.

## III.    DISCUSSION

Section 3B1.2(b) of the United States Sentencing Guidelines provides: "[i]f the defendant was a minor participant in any criminal activity, decrease by 2 levels." U.S.S.G. § 3B1.2(b). The reduction applies to a defendant "who is less culpable than most other participants in the criminal activity, but whose role could not be described as minimal." *Id.* § 3B1.2 cmt. n.5.

"[W]e read § 3B1.2 as instructing courts to look beyond the individuals brought before it to the overall criminal scheme when determining whether a

---

[1] The district court had jurisdiction pursuant to 18 U.S.C. § 3231. We have jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

particular defendant is a minor participant in the criminal scheme." *United States v. Rojas-Millan*, 234 F.3d 464, 473 (9th Cir. 2000). "[D]istrict courts must compare the defendant's involvement to that of all likely participants in the criminal scheme for whom there is sufficient evidence of their existence and participation." *United States v. Diaz*, 884 F.3d 911, 916 (9th Cir. 2018) (citing *Rojas-Millan*, 234 F.3d at 473).

In 2015, the Sentencing Commission amended the commentary to section 3B1.2 to include five factors that help guide this culpability analysis:

> (i) the degree to which the defendant understood the scope and structure of the criminal activity; (ii) the degree to which the defendant participated in planning or organizing the criminal activity; (iii) the degree to which the defendant exercised decision-making authority or influenced the exercise of decision-making authority; (iv) the nature and extent of the defendant's participation in the commission of the criminal activity, including the acts the defendant performed and the responsibility and discretion the defendant had in performing those acts; [and] (v) the degree to which the defendant stood to benefit from the criminal activity.

U.S.S.G. § 3B1.2 cmt. n.3(C). These factors were added to the commentary because the Sentencing Commission believed that the minor role reduction was being under-utilized. *See Diaz*, 884 F.3d at 915 ("In stating its purpose for the [2015] Amendment, the Sentencing Commission explained that minor-role adjustments had been 'applied inconsistently and more sparingly than the Commission intended,' and that it intended to address caselaw that might discourage courts from applying minor-role adjustments.") (quoting U.S.S.G. App. C. Amend. 794); *United States v.*

8

*Quintero-Leyva*, 823 F.3d 519, 523 (9th Cir. 2016) (discussing that the 2015 amendments to the commentary of section 3B1.2 were enacted to encourage the application of the minor role reduction).

We have also explained, however, that:

> Once the court has considered all the factors . . . it may grant or deny a reduction even if some of the factors weigh toward the opposite result. A district court, therefore, may grant a minor role reduction even if some of the factors weigh against doing so, and it may deny a minor role reduction even if some of the factors weigh in favor of granting a reduction. And because the factors set forth in the Amendment are non-exhaustive, a district court may also consider other reasons for granting or denying a minor role reduction.

*Quintero-Leyva*, 823 F.3d at 523. Moreover, while the sentence must be adequately reviewable on appeal, the district court is not required to discuss every factor in detail. *Diaz*, 884 F.3d at 916. And the misapplication of any one factor does not necessarily compel reversal. Ultimately, the record must show that the district court applied the law properly, gave thoughtful consideration to the relevant factors, and exercised sound discretion in their application.

Regarding defendants like Rodriguez specifically, the Sentencing Commission commented that:

> A defendant who is accountable . . . only for the conduct in which the defendant personally was involved and who performs a limited function in the criminal activity may receive an adjustment under this guideline. For example, a defendant who is convicted of a drug trafficking offense, whose participation in that offense was limited to transporting or storing drugs and who is accountable . . . only for the quantity of drugs

9

the defendant personally transported or stored may receive an adjustment under this guideline.

U.S.S.G. § 3B1.2 cmt. n.3(A). The Commission continued that "a defendant who does not have a proprietary interest in the criminal activity and who is simply being paid to perform certain tasks should be considered for an adjustment under this guideline." *Id.* § 3B1.2 cmt. n.3(C). Moreover, "[t]he fact that a defendant performs an essential or indispensable role in the criminal activity is not determinative." *Id.*

The district court discussed the five factors listed in application note 3(C) of the section 3B1.2 commentary, as well as additional factors, and applied them to the facts of this case.

### A. The Application of *Diaz* and the 2015 Amendments to the Section 3B1.2 Commentary

We review the application of the minor role factors listed in the section 3B1.2 commentary to the facts of the case for abuse of discretion as part of the third step of the analysis described in *Gasca-Ruiz*, 852 F.3d at 1170.

The defendant in *Diaz*, like Rodriguez, was a drug courier who pleaded guilty to drug importation. 884 F.3d at 913. He too was denied a minor role reduction. *Id.* at 914. We remanded the case for resentencing after concluding that the district court incorrectly interpreted several of the factors listed in application note 3(C) to the section 3B1.2 commentary. *Id.* at 918. We noted that the defendant: (1) "only knew two other participants . . . [which] tends to show that he had minimal knowledge

10

regarding the scope and structure of the criminal operation," *id.* at 917 (referencing the first factor of section 3B1.2 cmt. n.3(C)); (2) "did not know the type or quantity of the drugs hidden in his vehicle, [which] suggest[s] he did not play a significant role in planning or organizing," *id.* (referencing the second factor of section 3B1.2 cmt. n.3(C)); and (3) "was to receive a set fee of $1,000 and had no ownership interest or other stake in the outcome of the trafficking operation," indicating that "he is among the offenders the Sentencing Commission described as not having a '*proprietary* interest in the criminal activity and who is simply being paid to perform certain tasks.'" *Id.* at 917-18 (quoting *Quintero-Leyva*, 823 F.3d at 523) (referencing the fifth factor of section 3B1.2 cmt. n.3(C)).

Under *Diaz*, and contrary to the district court's analysis in this case, these three factors[2] also weigh in favor of awarding Rodriguez a minor role reduction. Additionally, because the district court correctly found that the third factor (the degree to which the defendant exercised decision-making authority)[3] weighed in favor of a reduction, at least four of five factors support granting the reduction.[4]

---

[2] U.S.S.G. §3B1.2 cmt. n.3(C)(i), (ii), (v).

[3] U.S.S.G. §3B1.2 cmt. n.3(C)(iii).

[4] We perceive no obvious abuse of discretion regarding the district court's application of the fourth factor (the nature and extent of the defendant's participation in the commission of the criminal activity), or its consideration of the additional factor of the type and amount of drugs at issue.

Regarding the first factor, "the degree to which the defendant understood the scope and structure of the criminal activity," U.S.S.G. § 3B1.2 cmt. n.3(C)(i), the district court concluded that the factor weighed against the reduction despite acknowledging that Rodriguez knew very little of the larger scope of the enterprise. In *Diaz*, we recognized that "a true minor participant may be unable to identify other participants with specificity" and that knowing only a few other participants "tends to show that [the defendant] had minimal knowledge regarding the scope and structure of the criminal operation." 884 F.3d at 917. Like the defendant in *Diaz*, who only knew two other participants, *id.*, Rodriguez only knew two participants by name and two others by description. The district court recognized that Rodriguez "was kept in the dark," but found the fact largely irrelevant. The district court provided that, "[i]f you say, well, she didn't know . . . who was at the top of this drug organization, she had no idea where the methamphetamine came from, she didn't know all the players involved, that type of analysis would describe every importer of drugs into the United States." Even if true in some cases, *Diaz* teaches that this exact fact is indicative of a minor role in the crime. *Id.* The fact that Rodriguez "was kept in the dark" is an important consideration under *Diaz* that weighs in favor of a minor role reduction. As a result, the district court abused its discretion in applying the first factor.

Regarding the second factor, "the degree to which the defendant participated in planning or organizing the criminal activity," U.S.S.G. § 3B1.2 cmt. n.3(C)(ii), the district court found that because Rodriguez participated in the *plan*, this factor weighed against the reduction. The district court explained that while Rodriguez "didn't come up with the plan," she "[o]f course" was "part of the plan." In light of *Diaz*, as well as the plain wording of application note 3(C)(ii), the district court abused its discretion in reaching this conclusion. Participating in the *plan* is not participating in the *planning* of the plan. Every person involved in the crime participates in the plan, but minor participants do not generally participate in the *planning* of the crime.

Additionally, like the defendant in *Diaz*, Rodriguez claimed to "not know the type or quantity of the drugs hidden in [her] vehicle," which also suggests she "did not play a significant role in planning or organizing." 884 F.3d at 917. During the sentencing hearing, however, the district court suggested that the fact a defendant did not know the type and amount of drugs he or she was transporting should only weigh in favor of the reduction if the defendant actually tried to investigate that fact for him or herself. The district court asked:

> Did she ever ask [the type of drugs]? I mean, it seems to me – I understand that not knowing what kind of drug is involved can be a mitigating fact, but it seems to me one has to say, hey, methamphetamine, I know what a pox that is on our community. You know, a little weed, sure, I'll cross that. I can live with that, but methamphetamine, no . . . . Did she ever ask that?

13

Such an inquiry negates the dictate in *Diaz* that this lack of knowledge weighs in favor of the minor role reduction, as well as the purpose of the 2015 amendments to the section 3B1.2 commentary of broadening the reduction's application. As the district court recognized, it would be very atypical for a courier to ask such questions, especially given the disparity of power between a drug courier and someone with such knowledge. To the extent the district court imposed a duty of inquiry upon Rodriguez in connection with the application of the second factor of note 3(C), this too was an abuse of discretion.

Regarding the fifth factor, "the degree to which the defendant stood to benefit from the criminal activity," U.S.S.G. § 3B1.2 cmt. n.3(C)(v), the district court concluded that this factor weighed against the reduction since "$8,000 is not an insubstantial amount for importers of drugs."[5] The district court also contended that it was "foolish" and "irrational" to weigh the defendant's compensation against the value of the drugs at issue.

In *Diaz*, we focused on whether the defendant had a proprietary or ownership interest in the criminal activity. *See* 884 F.3d at 917-18; *see also* U.S.S.G. § 3B1.2 cmt. n.3(C) (providing that "a defendant who does not have a proprietary interest in

---

[5] The district court also erred by considering $8,000 rather than $4,000 in connection with Rodriguez's compensation since the lesser amount is what Rodriguez was promised for committing the crime to which she pleaded guilty.

the criminal activity and who is simply being paid to perform certain tasks should be considered for an adjustment under this guideline"). Rodriguez undisputedly did not have such an interest; she received only a relatively modest fixed payment. Therefore, this factor weighs in favor of the reduction. As in *Diaz*, the district court here abused its discretion and erroneously "ignored that [Rodriguez's] compensation was relatively modest and fixed," which is indicative of a minor role. 884 F.3d at 918.

Moreover, our focus in *Diaz* on the defendant's proprietary interest in the criminal enterprise necessarily requires a comparison of the monetary value of the drugs or enterprise to the defendant's stake. Similarly, the use of the word "degree" in application note 3(C)(v) underscores that the benefit to the defendant requires some sort of comparative scale. The district court appeared to conclude that the comparison should be between the amount received and the amount the court thinks a courier would believe is a lot of money. This proposed comparison is purely speculative. The more concrete comparison is between the payment amount and the monetary value of the cargo, or some other scale that places the payment in relation to the worth of, or risk to, the enterprise. Contrary to the district court's understanding, this comparison envisioned under *Diaz* helps define the defendant's interest in the criminal activity.

In light of *Diaz* and the 2015 amendments to the commentary of section 3B1.2, we conclude that the district court abused its discretion in failing to properly consider: (1) factor one of application note 3(C), i.e., Rodriguez's limited knowledge of the scope and structure of the criminal activity, even though the court recognized Rodriguez was largely "kept in the dark" regarding the operation; (2) factor two, i.e., that, while Rodriguez participated in the planned crime, she did not participate in the planning of the crime, and that she did not know the type and amount of drugs in the vehicle; and (3) factor 5, i.e., Rodriguez's lack of a proprietary interest in the criminal activity and the fixed nature of her payment, and the degree to which she benefited from the crime.

### B. Relative Culpability

To determine whether a particular defendant is "substantially less culpable than the average participant in the criminal activity," the district court should consider the factors set forth in U.S.S.G. § 3B1.2 cmt. n.3(C) and discussed above. In this case, the district court also separately considered whether, unconnected to the factors and as a general matter, Rodriguez was less culpable than other participants (and thus warranted a section 3B1.2 minor role reduction). Rodriguez argues that in doing so the district court erred by not comparing her culpability to that of other unidentified individuals who are generally involved in drug trafficking organizations. She cites a report the Sentencing Commission sent to Congress that

16

lists roles of individuals often involved in drug trafficking organizations in order of their typical culpability, notes that "courier" appears second from the bottom, and argues that the district court should have compared her conduct to individuals occupying these roles who participated in her crime.

We disagree. The relevant comparators are the individuals involved in the crime for whom there is "sufficient evidence of their existence and participation in the overall scheme." *United States v. Rojas-Millan*, 234 F.3d 464, 474 (9th Cir. 2000). Thus, in *Rojas-Millan*, we held that the district court was required to compare the defendant's conduct to "the alleged Los Angeles supplier" from whom the defendant obtained the drugs and "the Reno distributor" to whom the defendant was delivering the drugs. *Id.* We did not hold that the court was required to compare Rojas-Millan's culpability to other unknown and unidentified individuals who may or may not have been involved in a larger drug trafficking organization. Indeed, we have rejected the argument Rodriguez raises here: "Every drug trafficking defendant could point to an unknown network preceding them in the drug trade. Such an argument will normally be ineffective when considering whether the defendant is entitled to a mitigating role reduction." *United States v. Rosas*, 615 F.3d 1058, 1068 (9th Cir. 2010). Because Rodriguez did not produce any evidence that the individuals identified in the Sentencing Commission's report existed and participated in her

17

crime, the district court did not err by declining to compare her conduct to the imagined conduct of those hypothetical participants.

## IV. CONCLUSION

The district court abused its discretion when analyzing: (1) factor one of application note 3(C), i.e., the degree to which Rodriguez understood the scope and structure of the criminal activity; (2) factor two, i.e., the degree to which she participated in the planning of the crime; and (3) factor five, i.e., the degree to which she stood to benefit from the crime.

Thus, we vacate Rodriguez's sentence and remand "because the decision to deny the adjustment rested on incorrect interpretations of the § 3B1.2 Guideline" and "we cannot determine whether the district court would have granted a minor role adjustment had these factors been properly applied." *Diaz*, 884 F.3d at 918.

**VACATED and REMANDED.**



LEE, Circuit Judge, concurring-in-part and dissenting-in-part:

This case presents a very close call on whether the district court abused its discretion in denying a minor role reduction for Sandra Rodriguez. While I concur in most of the majority's excellent opinion, I disagree with the majority's assessment for the second (knowledge of scope and structure of criminal scheme) and fifth factors (degree to which defendant stood to benefit) under § 3B1.2. I thus respectfully dissent.

\* \* \* \* \*

First, I do not believe the district court abused its discretion in assessing Rodriguez's knowledge of the scope and structure of the criminal activity. She knew four participants in the scheme, including their roles and how she would interact with them. She also knew about the general smuggling scheme: she understood that the vehicle was registered to her, that she would have it loaded with drugs in Mexico, that she would cross the border, that drugs would be dropped off to an individual in the United States, and that she was carrying a large quantity of illegal drugs across the border. As the district court found, this all suggests more than a limited understanding of the scope and structure of the scheme. *Cf. United States v. Quintero-Leyva*, 823 F.3d 519, 521, 523 (9th Cir. 2016) (stating that district court may not have abused discretion in denying minor role reduction where defendant "did not purchase or register the vehicle, was not present when the narcotics were

19

loaded into the vehicle … [and] did not know where he was supposed to drop off the vehicle after crossing into the United States").

Second, I also do not think the district court abused its discretion in finding that Rodriguez substantially benefited from this criminal scheme. When analyzing this factor, a court considers "the degree to which the defendant stood to benefit from [it]." U.S.S.G. § 3B1.2 cmt. 3(C)(v). This factor may support a minor role reduction if "[t]here [i]s no evidence that [defendant] had a proprietary interest in the outcome of the operation or stood to benefit more than minimally." *Diaz*, 884 F.3d at 918. Here, she still stood to gain $4,000, which is not an insignificant amount of money. *See Hurtado*, 760 F.3d at 1069 (concluding that defendant's $3,500 benefit from drug smuggling supported denial of minor role reduction).

Comment 3(C) is not to the contrary, as it merely states that a defendant "who is simply being paid to perform certain tasks *should be considered* for an adjustment." U.S.S.G. § 3B1.2 cmt. 3(C) (emphasis added). This language is not mandatory, and it leaves room for the district court to exercise its discretion.

Finally, I note that the district court within its discretion properly considered the large quantity of dangerous drugs and Rodriguez's prior smuggling run. *See United States v. Rodriguez-Castro*, 641 F.3d 1189, 1193 (9th Cir. 2011) ("The [district] court was justifiably skeptical that [33.46 kg.] of drugs would be entrusted

20

to a minor player."); *Hurtado*, 760 F.3d at 1069 (amount of drugs supported denial of minor role reduction).

I thus respectfully dissent.