**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee,* v. JESUS EZEQUIEL RODRIGUEZ, *Defendant-Appellant.* | No. 21-50108 D.C. No. 3:20-cr-02911-LAB-1 OPINION |

Appeal from the United States District Court
for the Southern District of California
Larry A. Burns, District Judge, Presiding

Argued and Submitted June 8, 2022
Pasadena, California

Filed August 17, 2022

Before: MILAN D. SMITH, JR., BRIDGET S. BADE, and
LAWRENCE VANDYKE, Circuit Judges.

Opinion by Judge Milan D. Smith, Jr.;
Concurrence by Judge VanDyke

## SUMMARY[*]

### Criminal Law

Vacating a sentence and remanding for resentencing in a case in which Jesus Ezequiel Rodriguez was convicted of importing methamphetamine into the United States, the panel held that the district court, which denied Rodriguez a minor-role adjustment under U.S.S.G. § 3B1.2(b), erred in analyzing whether to apply the adjustment.

The panel started by correcting two legal errors that appear to have infected all of the district court's analysis.

First, the district court incorrectly held that Rodriguez's recruiter's culpability was not relevant to the minor-role analysis.  The panel noted that in *United States v. Dominguez-Caicedo*, 40 F.4th 938 (9th Cir. 2022), this court clarified that the mitigating-role commentary's reference to the "average participant" refers to the "mathematical average," and that to calculate that average, *all* likely participants—including leaders or organizers or those who were otherwise highly culpable—must be included in the calculation.

Second, the district court appeared to treat each factor in the mitigating-role analysis as presenting a binary choice, but the commentary to § 3B1.2 instructs courts to analyze the *degree* to which each factor applies to the defendant.

---

[*] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

With these clarifications in mind, the panel turned to the three disputed factors among the five that district courts must consider when determining whether to grant a mitigating-role adjustment.

The first is the degree to which the defendant understood the scope and structure of the criminal activity. The panel wrote that the district court—which held that the first factor weighed against granting the adjustment because Rodriguez was aware of his own role in the offense—misunderstood the first factor. The panel explained that when applying it, a district court must examine the defendant's knowledge of the scope and structure of the criminal *enterprise*, not just his knowledge of his own conduct. The panel wrote that on remand, the district court, which appeared to conclude that a larger drug trafficking organization was involved in the offense, should examine the degree to which Rodriguez knew of the scope and structure of that organization.

The second factor is the degree to which the defendant participated in planning or organizing the criminal activity. Holding that the district court's interpretation of this factor was erroneous, the panel explained that one who simply receives instructions and follows them does not "plan" or "organize" the crime.

The fifth factor is the degree to which the defendant stood to benefit from the criminal activity. The panel wrote that the district court's holding—that this factor weighed against Rodriguez because $1,500 "is not an insubstantial amount of money"—is inconsistent with *United States v. Diaz*, 884 F.3d 911 (9th Cir. 2018). The panel noted that the district court did not consider that Rodriguez was to be paid a fixed amount to perform a discrete task, that he did not have a proprietary interest in the drugs, and that the

amount he was to be paid was relatively modest compared to the value of the drugs. The pane wrote that like all of the other factors, the purpose of this factor is to aid in determining the defendant's relative role in the offense.

Because the panel vacated the sentence and remanded for resentencing, the panel did not need to reach Rodriguez's argument that the district court erred in concluding that he was not eligible for safety-valve relief.

Concurring in the judgment, Judge VanDyke agreed with the majority that this case should be remanded because the district court misapplied some of the mitigating-role factors in a way that may have affected the court's ultimate decision not to grant a minor role reduction. He wrote separately to note (1) the district court's significant reliance on considerations *beyond* the five explicit factors provided by the sentencing guidelines was not error; and (2) unless a defendant offers some real proof to the contrary, someone running large quantities of drugs across the border understands "the scope and structure of the criminal activity" well enough for the first factor to weigh against the defendant, regardless of whether he knows specifically the many other participating individuals.

**COUNSEL**

John Lanahan (argued), San Diego, California, for Defendant-Appellant.

Bahid A. Mouannes (argued), Special Assistant United States Attorney; Daniel E. Zipp, Chief, Appellate Section, Criminal Division; Randy S. Grossman, United States Attorney; United States Attorney's Office, San Diego, California; for Plaintiff-Appellee.

**OPINION**

M. SMITH, Circuit Judge:

Jesus Ezequiel Rodriguez was convicted of importing methamphetamine into the United States. He argues that we should vacate his sentence and remand for resentencing because the district court erred in denying him a minor-role adjustment at sentencing and by erroneously concluding that he was not eligible for safety-valve relief. We hold that the district court erred in analyzing whether to apply the minor-role adjustment, so we vacate Rodriguez's sentence and remand for resentencing. In light of this holding, we need not address Rodriguez's safety-valve argument.

**I**

In August 2020, Rodriguez attended a party and discussed with a friend how difficult it was to find jobs during the COVID-19 pandemic. A man named Gordo overheard the conversation and asked Rodriguez if he would

be willing to smuggle drugs into the United States.[1] A few days later, Rodriguez agreed to do so for between $2,000 and $3,000. Gordo said that he would provide a vehicle for Rodriguez and would call him when he was needed. Gordo later called Rodriguez and told him to meet Gordo at a hotel in Tijuana, Mexico the next day. Gordo brought Rodriguez a vehicle with drugs already loaded into it, and instructed Rodriguez to cross the border and then await a call for further instructions about where to deliver the vehicle. Rodriguez was never told of the type or quantity of drugs in the car.

The next day, as Rodriguez was attempting to cross the border, a law enforcement officer inspected the vehicle and observed packages underneath the carpet in the trunk. After searching the vehicle, the officer discovered 83 packages containing methamphetamine, weighing 40.84 kilograms. The Government later represented at sentencing that the methamphetamine was approximately 92% pure, meaning the packages contained 33.8 kilograms of methamphetamine.

Rodriguez was charged with, and pled guilty to, importing methamphetamine in violation of 21 U.S.C. §§ 952, 960. At sentencing, Rodriguez urged the district court to reduce his offense level because his role in the crime was relatively minor. *See* U.S.S.G. § 3B1.2(b). The Probation Office agreed, but the Government argued against the adjustment. The Government's argument, in its entirety, was as follows: "Based on defendant's prior smuggling conviction and the vagueness of his story, the United States

---

[1] These facts come from the Presentence Report (PSR). Neither party objected to the PSR, and the district court accepted these undisputed facts as true. *See* Fed. R. Crim. P. 32(i)(3)(A); *United States v. Gasca-Ruiz*, 852 F.3d 1167, 1168 (9th Cir. 2017) (en banc).

had a difficult time believing defendant's claims about how he recently became involved in the offense conduct." The Government did not supplement this statement with any argument regarding the minor role adjustment at the sentencing hearing. The district court ultimately denied the requested minor-role adjustment, and sentenced Rodriguez to seven-and-a-half years in prison.

## II

The Sentencing Guidelines provide district courts with tools for distinguishing among individuals who commit the same crime but have different levels of relative culpability. Leaders of a criminal offense may have their offense levels increased by up to four levels, and individuals who had relatively minor roles may have their offense levels reduced by up to four levels. *See* U.S.S.G. §§ 3B1.1, 3B1.2.

To be eligible for the two-level adjustment Rodriguez sought, a defendant must be "less culpable than most other participants in the criminal activity," U.S.S.G. § 3B1.2(b), cmt. 5, and "substantially less culpable than the average participant in the criminal activity," *id.* at cmt. 3(A). *See United States v. Dominguez-Caicedo*, 40 F.4th 938, 960 (9th Cir. 2022); *Stinson v. United States*, 508 U.S. 36, 42–46 (1993) (holding that the guidelines commentary is generally binding). Before 2015, the mitigating-role commentary provided little guidance regarding how to determine a defendant's culpability relative to the other participants in the offense. For the most part, district courts took a freewheeling approach, considering whatever factors they deemed relevant. Perhaps unsurprisingly, district courts diverged significantly in how they applied the minor-role adjustment. The Sentencing Commission reviewed numerous cases addressing the mitigating-role guideline and determined that it was being "applied inconsistently and

more sparingly than the Commission intended." U.S.S.G. Supp. to App. C. Amend. 794. For example, "drug defendants who performed similar low-level functions," like those working as "couriers and mules" received mitigating-role adjustments only 14.3 percent of the time in one district along the southwest border and received the adjustments 97.2 percent of the time in another. *Id.*

To remedy this problem, the Sentencing Commission amended the commentary to induce district courts to grant mitigating-role adjustments more frequently. *See id.*; *see also United States v. Diaz*, 884 F.3d 911, 915 (9th Cir. 2018). The Commission's most significant change was to introduce five factors district courts "should consider" when determining whether to apply an adjustment:

> (i)     the degree to which the defendant understood the scope and structure of the criminal activity;
>
> (ii)    the degree to which the defendant participated in planning or organizing the criminal activity;
>
> (iii)   the degree to which the defendant exercised decision-making authority or influenced the exercise of decision-making authority;
>
> (iv)    the nature and extent of the defendant's participation in the commission of the criminal activity, including the acts the defendant performed and the responsibility and discretion the defendant had in performing those acts;

(v)     the degree to which the defendant stood to benefit from the criminal activity.

U.S.S.G. § 3B1.2 cmt. 3(C). We have since held that district courts must consider *all* of these factors when determining whether to grant a mitigating-role adjustment. *See United States v. Quintero-Leyva*, 823 F.3d 519, 523 (9th Cir. 2016). Thus, gone are the days when district courts had virtually unlimited discretion to simply deem a defendant to be of above average, average, or below average culpability. Now, "the assessment of a defendant's eligibility for a minor-role adjustment must include consideration of the factors identified by the Amendment, not merely the benchmarks established by our caselaw that pre-dates Amendment 794's effective date." *United States v. Diaz*, 884 F.3d 911, 916 (9th Cir. 2018).

The district court analyzed each of the five factors in this case, and concluded that the first, second, and fifth factors weighed against Rodriguez and that the third weighed in his favor.[2]

## III

We apply different standards of review to different aspects of a district court's application of the Sentencing Guidelines. We review the district court's identification of the correct legal standard *de novo*, its factual findings for clear error, and its application of the legal standard to the facts for abuse of discretion. *See United States v. Gasca-Ruiz*, 852 F.3d 1167, 1170 (9th Cir. 2017) (en banc). Because we conclude that the district court misunderstood

---

[2] It is not clear how the district court weighed the fourth factor.

the mitigating-role commentary, we clarify the relevant legal standards and leave for the district court to apply the correct standards in the first instance in this case. We start by correcting two legal errors that appear to have infected all of the district court's analysis, and then we address each of the challenged factors.

## A

First, the district court held that Rodriguez's recruiter's culpability was not relevant to determining whether Rodriguez's role was minor because, in the district court's view, his recruiter (Gordo) was not an "average" participant in the offense. The district court explained:

> The person that recruited him, that, you know, offered him the money, that made the arrangements, [Rodriguez is] less culpable than that person, as I said, *but that person is not an average participant*. That person organized this, had the wherewithal to tell him where to go, was obviously in touch with people in Mexico that had the drugs, had authority to negotiate how much he'd pay him. So, *while the defendant, I find, was less culpable than that person, that person wasn't an average participant*.

(emphasis added). Elsewhere, the district court stated:

> Here's the problem. I mean, I continually find that people who recruit, have authority to negotiate the amount of money that the importer's to be paid, have access to the drugs, coordinate where the person's to take them and what's going to happen, they're

organizers, and I have no problem in almost every case saying, well, the importer is less culpable than that person. *But it doesn't help the minor role analysis . . . because as you know, the focus on minor role is other average participants, not people in leadership . . . . That's why I find it to be kind of a superfluous point here.*

(emphasis added). This understanding of the mitigating-role guideline is incorrect. We recently clarified that the mitigating-role commentary's reference to the "average participant" refers to "the mathematical average," and that to calculate that average "'*all* likely participants in the criminal scheme' must be included." *United States v. Dominguez-Caicedo*, 40 F.4th 938, 960 (quoting *Diaz*, 884 F.3d at 916–17). This means that even "those that the district court believe[s] were leaders or organizers or who were otherwise highly culpable" must be included in the calculation. *Id.* at *18. Therefore, each co-participant's culpability affects the minor role analysis, and the district court erred by holding that Gordo's culpability was not relevant.

Second, the district court appeared to treat each factor as presenting a binary choice: either it was satisfied, and it weighed against a minor role reduction, or it was not, and it weighed in favor of the reduction.[3] But the commentary instructs courts to analyze the *degree* to which each factor applies to the defendant. The question is not simply *whether* the defendant "understood the scope and structure,"

---

[3] For instance, as the district court ticked through the factors it noted: "I think the defendant understood the scope and structure of the criminal activity," "he did have a part in the planning," and he received "not an insubstantial amount of money."

"participated in planning or organizing," or "stood to benefit" from the crime. This is because the purpose of these factors is to determine the defendant's role *relative to* other participants in the crime. *See, e.g., United States v. Demers*, 13 F.3d 1381, 1384 (9th Cir. 1994) ("[T]he touchstone of a § 3B1.2 adjustment is the defendant's relative culpability."). And even a defendant who knows some of the scope and structure of the organization, participates in some of the planning, and receives a large payment for his participation could still play a relatively minor role compared to his co-participants if they know more about the scope and structure of the organization, are more heavily involved of the planning, and receive a larger share of the proceeds. The key question is how the defendant compares with the other participants in the offense.

With these clarifications in mind, we turn to each of the disputed factors.

## B

The first factor is "the degree to which the defendant understood the scope and structure of the criminal activity." U.S.S.G. § 3B1.2 cmt. 3(C)(i). The district court held that this factor weighed against granting the minor-role adjustment because Rodriguez was aware of his own role in the offense. The court stated:

> I think the defendant understood the scope and structure of the criminal activity. In this case, criminal activity, of course, is importing. The defendant knew he would be called at some point, asked to go to Mexico, leave his car there, pick up another car, drive it back, get directions, that the car would be loaded with drugs. He knew he was going to

> be paid if he got across the border, and, you know, to some extent, I think the gloss on this is that the defendant had been a drug transporter before.

This analysis reflects a misunderstanding of the first factor.

In *United States v. Diaz*, which is thus far our only published opinion analyzing these factors, we held that the first factor requires district courts to assess the defendant's knowledge of the scope and structure of the "criminal *enterprise*," not just his knowledge of his own conduct that led to his conviction. *See* 884 F.3d at 917 (emphasis added). Thus, in *Diaz*, we held that the first factor weighed in the defendant's favor even though the defendant was aware of his role in the offense because Diaz knew only two other participants in the crime, which "show[ed] that he had minimal knowledge regarding the scope and structure of the criminal operation." *Id.* This interpretation is consistent with the Sentencing Commission's commentary, which explains that "the defendant's lack of knowledge or understanding of the scope and structure *of the enterprise and of the activities of others* is indicative of a role as a minimal participant." U.S.S.G. § 3B1.2 cmt. 4 (emphasis added). Thus, when applying the first factor, a district court must examine the defendant's knowledge of the scope and structure of the broader group of people involved in the offense.

This approach is also more consistent with the purpose of the factors, which is to help the district court assess the defendant's role relative to other participants in the offense. High-level or more-involved participants are likely to know more about the scope and structure of a criminal organization than are minor participants who may be junior members of the organization or who, like Rodriguez, appear

to be akin to independent contractors carrying out one-off tasks. The district court's approach, by contrast, would render this factor essentially useless for ascertaining the defendant's relative role because *every* defendant who is convicted of a crime is aware of his *own* conduct in committing the offense. If a defendant's knowledge of his own conduct were sufficient to weigh this factor against a defendant, it would never weigh in the defendant's favor, and thus would never help clarify the defendant's relative role.

In this case, the district court appeared to conclude that a larger drug trafficking organization was involved in the offense. On remand, then, the district court should examine the degree to which Rodriguez knew of the scope and structure of that organization.

## C

The second factor is "the degree to which the defendant participated in planning or organizing the criminal activity." U.S.S.G. § 3B1.2 cmt. 3(C)(ii). The district court held that Rodriguez "participated in planning or organizing the criminal activity" because Gordo gave him instructions and Rodriguez followed them. The district court stated that although Rodriguez "didn't devise the plan, . . . he certainly participated in it and it was laid out to him. And it wasn't coincidental that, on the day he was supposed to go to Mexico, he drove down to Mexico. So he did have a part in the planning." In the district court's view, if "a plan is hatched by somebody, [and] agreed to by other people who play their assigned role[s] . . .   [t]hey're part of the planning."

This interpretation of the second factor is also erroneous. First, the plain language of this factor indicates that the

district court must assess the degree to which the defendant participated in *devising* the plan. The use of the words "planning or organizing," as verbs, indicates that the defendant must take an active role in developing the plan. One who simply receives instructions and follows them does not "plan" or "organize" the crime.

Second, the district court's interpretation is inconsistent with how we analyzed this factor in *Diaz*. There, we held that the fact that Diaz "did not know the type or quantity of the drugs hidden in his vehicle[] suggest[ed] he did not play a significant role in planning or organizing." 884 F.3d at 917. This was the case even though he had crossed the border twice—once as a practice run and once to support his friend—before crossing the border on the day he was arrested. *See id.* at 913. If simply being told the plan and following it were sufficient to weigh this factor against the defendant, we could not have held that this factor weighed in Diaz's favor because he, like Rodriguez, was aware of the plan before committing the offense.

Third, for the reasons stated above, the district court's interpretation—that following instructions is "planning or organizing"—would render this factor useless for determining the defendant's relative role since virtually every defendant who participates in a multi-defendant crime has either devised the plan or followed it. Our interpretation in *Diaz*, on the other hand, is consistent with the purpose of this factor: one who devises a plan and organizes others is likely to play a more significant role, while one who simply follows instructions is likely to play a less significant role.

## D

The fifth factor is "the degree to which the defendant stood to benefit from the criminal activity." U.S.S.G.

§ 3B1.2 cmt. 3(C)(v). The district court held that this factor weighed against Rodriguez because $1,500 "is not an insubstantial amount of money."[4] This, too, is inconsistent with *Diaz*. In *Diaz*, the defendant was "to receive a set fee of $1,000" for driving drugs across the border. 884 F.3d at 917. We held that the district court erred by weighing this factor against Diaz because the district court "ignored that [the defendant's] compensation was relatively modest and fixed." *Id.* at 918. To properly apply this factor, we explained, the district court must consider whether the defendant has a "proprietary interest in the criminal activity," such as "an ownership interest or other stake in the outcome of the trafficking operation." *Id.* at 917–18; *see also* U.S.S.G. § 3B1.2, cmt. 3(C) ("[A] defendant who does not have a proprietary interest in the criminal activity and who is simply being paid to perform certain tasks should be considered for an adjustment under this guideline."). Because Diaz did not have a proprietary interest in the drugs and because the amount he would be paid "was relatively modest and fixed" this factor weighed "in favor of granting the adjustment." *Id.* at 918. Here, the district court did not consider that Rodriguez was to be paid a fixed amount to perform a discrete task, that he did not have a proprietary interest in the drugs, and that the amount he was to be paid was relatively modest compared to the value of the drugs. Like all of the other factors, the purpose of this factor is to aid in determining the defendant's relative role, not just to determine whether the defendant received what the district court considers to be a lot of money in an absolute sense.

---

[4] According to the PSR, the actual amount Rodriguez was to be paid was between $2,000 and $3,000.

## IV

For the foregoing reasons, we vacate Rodriguez's sentence and remand for resentencing. Because we vacate Rodriguez's sentence and remand, we need not reach Rodriguez's safety-valve argument. *See United States v. Munoz-Camarena*, 631 F.3d 1028, 1031 (9th Cir. 2011) (as amended).

**VACATED AND REMANDED.**

---

VANDYKE, Circuit Judge, concurring in the judgment:

I agree with the majority that this case should be remanded for resentencing because the district court misapplied some of the mitigating-role factors in a way that may have affected the court's ultimate decision not to grant a minor role reduction. I agree with the majority, for example, that the district court erred in its "average participant" analysis. I also agree that the mere fact that the defendant knew about his *own* role in the criminal enterprise (which will always be true) cannot be a sufficient basis to weigh the first factor against him. Similarly, the mere fact that the defendant followed *his* part of the criminal plan (which, again, will always be true) cannot be a sufficient reason to weigh the second factor against him. These mistakes infected the district court's analysis such that I cannot be sure what conclusion the district court would have reached had it analyzed the factors properly.

I write separately to note a few things. First, the district court here relied significantly on considerations *beyond* the five explicit factors provided by the sentencing guidelines. This was not error. The sentencing guidelines themselves

make clear that district courts have broad discretion to weigh not only the explicit factors themselves, but also additional considerations beyond those factors when considering whether a criminal defendant is entitled to a minor role reduction.    *See* U.S.S.G. § 3B1.2 cmt. 3(C) ("the court should consider the following *non-exhaustive* list of factors" (emphasis added)); *see also United States v. Diaz*, 884 F.3d 911, 915–18 (9th Cir. 2018) (citing § 3B1.2 cmt. 3(C) and acknowledging that "the district court has considerable latitude in ruling on minor-role adjustments"); *United States v. Quintero-Leyva*, 823 F.3d 519, 523 (9th Cir. 2016) ("And because the factors set forth in the Amendment are non-exhaustive, a district court may also consider other reasons for granting or denying a minor role reduction.").

Here, those additional considerations included: (1) the large amount of methamphetamine Rodriguez transported, (2) that Rodriguez had previously transported drugs, (3) that the transport was not a spur of the moment operation, and (4) that Rodriguez's claim that he had a minor role in the crime was inconsistent with his claim that he was one of only two participants in that crime.    Had the district court *properly* analyzed the five factors, correctly concluded that one or more of them weighed against Rodriguez, and then concluded that those factors plus all the other considerations merited a denial of a minor role adjustment, I would not conclude that the court had abused its considerable discretion.    But that is not what the district court did, so I agree with the majority that remand is proper.

Relatedly, while I agree with the majority (and *Diaz*) that a defendant's knowledge of his own role in a criminal enterprise alone cannot be enough to weigh against the defendant under the first factor, the mere fact that a defendant convicted for drug-running says he only knows

one or two other people in the enterprise also cannot be dispositive under that factor. It begs credulity to pretend that your average cross-border drug-smuggler is blissfully unaware that he is working for a criminal cartel, along with everything that entails. He may not know the names and job titles of every member of the cartel, or be on a first-name basis with Pablo Escobar, but it is absurd to think *he thinks* he is working for some tiny "start-up" drug smuggling enterprise.[1] In short, unless he offers some real proof to the contrary, someone running large quantities of drugs across the border understands "the scope and structure of the criminal activity" well enough, *regardless* of whether he knows specifically the many other participating individuals.

---

[1] Indeed, this case demonstrates one of the oddities of indulging such an unrealistic assumption. On one hand, Rodriguez claims he only knew one other participant in the criminal enterprise—his recruiter "Gordo"—which he relies on in arguing that the first factor should not weigh against him because that somehow means he was not "aware of the scope and structure of the drug trafficking organization." But on the other hand, Rodriguez asks the court to assume there were *many* individuals "higher in the organization" such that he was substantially less culpable than the average participant in his criminal conspiracy. Rodriguez cannot have it both ways. Surely, he has always known what he expects everyone else to know: the general "scope and structure of the drug trafficking organization" in which he was playing a critical role.