**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | No.23-50041 |
| *Plaintiff-Appellee*, | D.C. No. 3:18-cr-00421-BEN-3 |
| v. | |
| VICTOR GASPAR CHICHANDE, | |
| *Defendant-Appellant*. | OPINION |

Appeal from the United States District Court
for the Southern District of California
Roger T. Benitez, District Judge, Presiding

Submitted May 10, 2024[*]
Pasadena, California

Filed August 15, 2024

Before: Kim McLane Wardlaw, Morgan Christen, and
Mark J. Bennett, Circuit Judges.

Opinion by Judge Bennett

---

[*] The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

# SUMMARY[**]

## Criminal Law

The panel affirmed Victor Gaspar Chichande's 180-month sentence following his jury conviction for conspiring to distribute cocaine on board a vessel, possession of cocaine with intent to distribute on board a vessel, and aiding and abetting.

In a prior appeal, this court affirmed Chichande's conviction but vacated his sentence and remanded for resentencing because the district court had erred in analyzing whether he was entitled to a minor role reduction under U.S.S.G. § 3B1.2(b). In analyzing a request for a minor role reduction, the sentencing court must (1) identify all participants in the defendant's crime; (2) calculate a rough average level of culpability for all the participants, considering the five factors in comment 3(C) of the Mitigating Role Guideline; and (3) compare the defendant's culpability to that rough average. If the defendant is substantially less culpable that that average and meets the other criteria, he should be granted a minor role adjustment. The district court had erred by attempting to identify a single average participant with whom to compare Chichande, rather than comparing him against the average of all of the individuals who participated in his offense.

On remand, the district court again declined to grant a minor role reduction. Affirming, the panel clarified that the court's precedent does not require a sentencing court to

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

calculate an average level of culpability with mathematical certitude. The panel held that the district court did not err in denying the minor role reduction because the court properly identified all the individuals for which there was sufficient evidence of their existence and participation in Chichande's crimes, then calculated a rough average level of culpability for all those individuals using the five factors, and finally compared Chichande's culpability to that rough average and determined that he represented the average participant and, at the very least, was not substantially less culpable that the average participant.

The panel declined to vacate and remand for resentencing based on a retroactive amendment adopted by the Sentencing Commission, which provides for an offense level reduction for certain defendants with zero criminal history points. The panel agreed with the government that a remand is unnecessary because the Southern District of California has established a protocol for implementing the retroactive zero-point offender reduction, and Chichande does not dispute that he could seek relief by following the protocol.

## COUNSEL

D. Benjamin Holley and P. Kevin Mokhtari, Assistant United States Attorneys; Daniel E. Zipp, Assistant United States Attorney, Chief, Appellate Section, Criminal Division; Tara K. McGrath, United States Attorney; United States Department of Justice, Office of the United States Attorney, San Diego, California; for Plaintiff-Appellee.

Benjamin P. Lechman, Law Offices of Benjamin P. Lechman, Los Angeles, California, for Defendant-Appellant.

---

**OPINION**

BENNETT, Circuit Judge:

Victor Gaspar Chichande challenges his 180-month sentence, arguing (1) the district court erred in denying a minor role reduction under § 3B1.2(b) of the United States Sentencing Guidelines ("Guidelines" or "U.S.S.G."); and (2) in any event, a remand is appropriate because he qualifies for a retroactive reduction under U.S.S.G. § 4C1.1 ("zero-point offender reduction"). We have jurisdiction under 28 U.S.C. § 1291 and affirm.

In analyzing whether a defendant's culpability is substantially less than the average participant's under U.S.S.G. § 3B1.2 ("Mitigating Role Guideline"), we do not require mathematical certitude. Because the district court applied the correct legal standard and reasonably concluded that Chichande represented the average participant or, at the very least, was not substantially less culpable than the average participant, we affirm the denial of the minor role reduction. We also decline to remand for resentencing because the Southern District of California has established a protocol for implementing the retroactive zero-point offender reduction, and we see no prejudice to Chichande in requiring him to follow the protocol.

# I

In December 2017, the United States Coast Guard found Chichande, an Ecuadorian citizen, and his two co-defendants—Adrian Andres Cortez-Quinonez and Segundo Marcial Dominguez-Caicedo—piloting a small panga boat[1] loaded with about 1,230 kilograms of cocaine worth $28 million. The Coast Guard spotted the panga boat near the Galapagos Islands. When a Coast Guard helicopter appeared, the defendants threw an item overboard. The helicopter activated its law-enforcement lights and broadcast a message, ordering the boat to stop. When the boat did not stop, a person onboard the helicopter fired warning shots "across the [panga's] bow." The boat stopped, the three defendants threw more items overboard, and then the boat took off again. The Coast Guard disabled the boat by shooting out its engine. The government later determined that the packages thrown overboard contained cocaine and were attached to a GPS buoy.

A jury convicted Chichande and his co-defendants of conspiring to distribute cocaine on board a vessel, possession of cocaine with intent to distribute on board a vessel, and aiding and abetting. The district court sentenced Chichande to 180 months' imprisonment. He appealed his conviction and sentence.

In *United States v. Dominguez-Caicedo*, 40 F.4th 938 (9th Cir. 2022), *cert. denied*, 143 S. Ct. 2615 (2023), we affirmed Chichande's conviction but vacated his sentence

---

[1] A "panga is a type of modest-sized, open, outboard-powered, fishing boat common throughout much of the developing world, including Central America, the Caribbean, parts of Africa, the Middle East, and much of Asia." *Panga (skiff)*, Wikipedia, https://perma.cc/YXR3-X8A2.

and remanded for resentencing because the district court had erred in analyzing whether Chichande was entitled to a minor role reduction under U.S.S.G. § 3B1.2(b). *Id.* at 962–64. We explained the proper framework for analyzing a request for a minor role reduction. In summary, the sentencing court must first identify all participants in the defendant's crime. *Id.* at 960. Second, it must calculate a rough average level of culpability for all the participants, considering the five factors in comment 3(C) of the Mitigating Role Guideline.[2] *Id.* Finally, the court must compare the defendant's culpability to that rough average. *Id.* If the defendant is "substantially less culpable than that average and meets the other criteria, he should be granted a mitigating role adjustment." *Id.*

We held that the district court had failed to conduct the proper comparative analysis because it "attempted to

---

[2] The five "non-exhaustive" factors are:

> (i)    the degree to which the defendant understood the scope and structure of the criminal activity;
> (ii)    the degree to which the defendant participated in planning or organizing the criminal activity;
> (iii)    the degree to which the defendant exercised decision-making authority or influenced the exercise of decision-making authority;
> (iv)    the nature and extent of the defendant's participation in the commission of the criminal activity, including the acts the defendant performed and the responsibility and discretion the defendant had in performing those acts; [and]
> (v)    the degree to which the defendant stood to benefit from the criminal activity.

U.S.S.G. § 3B1.2 cmt. 3(C). We refer to these factors as the "five factors." We consider only these factors because Chichande does not argue that any other factor applies.

identify a single 'average participant' with whom to compare Chichande," rather than comparing Chichande against the "average of *all* of the individuals who participated in Chichande's offense" and, "[a]t a minimum, the court excluded [Chichande's] recruiter" from the comparison group. *Id.* at 963. We remanded "for the district court to conduct the minor role analysis applying the correct legal standard." *Id.*

On remand, Chichande argued in his supplemental sentencing memorandum that he "had no clue of the scope and structure of the criminal activity"; he "did nothing to aid in the planning or organization of the criminal activity"; he had "no decision-making authority nor did he influence anyone else in the criminal venture"; he "exercised no discretion in performing the acts he did undertake" because he "was told by others what to do every step of the way"; and although he was promised $38,000, he did not initially know that this amount would require participation in criminal activity.

Chichande identified several people allegedly involved in the criminal venture: his two co-defendants; the "security force" men with guns who were present when Chichande boarded the panga boat; the people who communicated on the radios with Chichande and his co-defendants while they were at sea; the owners of the cocaine; Chichande's recruiter; and other unidentified individuals involved in the manufacture, transportation, and distribution of the cocaine. Chichande, however, did not offer an average level of culpability for those individuals based on the five factors. Instead, he touched on only the recruiter's culpability, arguing that the recruiter would "be a person trusted by the managers in the criminal organization to find and recruit . . . qualified seamen who . . . [could] navigate and pilot a fishing

vessel or panga boat on the open sea," and that the "recruiter provided the initial $3,000 payment" to Chichande.

The government argued in its sentencing memorandum that, considering the known participants and the five factors, Chichande was an average participant in the offense. According to the government, he had some knowledge of the scope and structure of the criminal activity because he knew that he would be paid a large sum of money to pilot a boat and deliver the cocaine from "Ecuador/Colombia to a location off the coast of Mexico." While there was "little to no information" that he planned or organized the venture, he "exercised considerable decision-making authority," as he threw the cocaine overboard (against instructions from the person on the radio) and chose how to navigate the vessel to avoid law enforcement. He also must have been a trusted member of the organization, as he had been given significant responsibility for transporting and safeguarding a large amount of cocaine across the high seas. The government further argued that Chichande stood to gain $38,000, which was more than six times his prior annual earnings in Ecuador.

At the resentencing hearing, the district court asked defense counsel to mathematically explain Chichande's and the other participants' culpability, considering the five factors. The court appeared to believe that *Dominguez-Caicedo* required it to calculate a numerical average. Defense counsel expressed that he could not provide a precise "mathematical formula[]." The district court shared defense counsel's frustration.

Defense counsel proposed instead that the court look at the circumstances supporting a finding that Chichande played a minor role. Namely, that Chichande was in

desperate need of money and only discovered that he had signed up to transport drugs when it was too late to back out. The district court rejected this argument because it was "depend[e]nt upon [the court] accepting Mr. Chichande's version of what the universe looks like," and the court "[did]n't believe a word [Chichande] said." The court stated that "[w]hen it comes to Mr. Chichande, the jury didn't believe a word he said and neither do I."

Government counsel tried to present a mathematical average by assigning a rough point value (one to five) to each of the five factors for each participant in the criminal venture. The participants the government listed included Chichande and his two co-defendants, the owner of the drugs, the men with guns who were guarding the drugs, Chichande's recruiter, and the person who drove Chichande to the panga boat.[3]

Government counsel argued that the owner of the drugs should get twenty-five points (five for each factor) because, as the owner, they would have the highest degree of understanding, participation in the planning and organization, and decision-making authority. They would also benefit the most. The government argued that the people who held "ancillary" positions—the man who drove Chichande to the panga boat and the men who guarded the drugs—fell on the other end of the culpability spectrum. According to the government, those individuals scored low, between a five or seven total, because there was insufficient evidence to show that they played more extensive roles than

---

[3] Chichande did not dispute below, and has not disputed on appeal, that the individuals listed by the government at the sentencing hearing constitute the proper comparison group.

simply taking Chichande to the boat or guarding the drugs until the panga boat departed.

Given the recruiter's role—finding people who could be trusted to pilot a small boat carrying a large amount of drugs on a week-long journey—the government urged that the recruiter's degree of culpability was likely in the higher mid-range of the spectrum, around an eighteen.  For the first factor, the government argued that the recruiter probably had some understanding about the scope and organization of the criminal activity because he had to know the type of people to recruit and what they would be doing.  By recruiting Chichande to pilot the boat, the recruiter was directly involved in the planning.  For the next two factors—decision-making authority and nature and extent of his participation—the government argued that the recruiter had some decision-making authority by deciding who to recruit, and his role was important because he helped ensure that the venture would move forward successfully.  The recruiter was also presumably paid to recruit Chichande, a crucial person needed to move the drugs.

The government conducted the same analysis for Chichande, scoring him (and his two co-defendants[4]) around a sixteen, making him the average participant when compared to the other individuals.  As to the first two factors, the government conceded that Chichande likely scored low, given the lack of evidence suggesting that he had a substantial understanding of the scope of the criminal activity or participated in planning and organizing the smuggling venture.  But the government argued that

---

[4] Given their similar roles, the government argued that Chichande and his two co-defendants had about the same degrees of culpability. Chichande does not argue otherwise in this appeal.

Chichande's degree of culpability increased under the remaining factors. The government reasoned that Chichande had "mid[] level" decision-making authority because he (like his co-defendants) piloted the boat, decided to flee when they were spotted by the Coast Guard, and decided to throw the drugs overboard (which conflicted with the instructions they had received).[5] As to the nature and extent of Chichande's participation, the government scored Chichande highly because he provided a specialized skill— navigating a small boat for several days on the open sea. The government also argued that the fact that Chichande would be paid $38,000 and was entrusted with *$28 million* worth of cocaine supported that he was a valuable, trusted member of the organization. Finally, while he did not stand to benefit as much as the owner of the drugs, he stood to benefit a substantial amount: more than six times his annual salary for a one-week trip.

The district court adopted the government's analysis and declined to grant a minor role reduction:

> I don't think he qualifies for [the] minor role. As [government counsel] said, he is the

---

[5] "Cortez-Quinonez identified himself as the 'master' of the vessel through an interpreter, to one of the Coast Guard officers." *Dominguez-Caicedo*, 40 F.4th at 946. But it is undisputed that all the defendants operated the panga boat and took turns driving. Indeed, at the initial sentencing hearing, the district court found: "They were all driving, took turns driving the boat. They all took turns in heaving the cocaine over the side when they saw the coast guard vessel. They all took turns in fleeing from the coast guard vessel." The district court also found that Chichande and his co-defendants threw the drugs and GPS device overboard to "allow them to come back and pick it up if they were able to evade law enforcement or would allow someone else to come by and pick it up sometime later."

average.  He's the average. . . .  I thought [government counsel] did a pretty good job trying to quantify that which is just generally not quantifiable.  And looking at those numbers, if you add them up, I think that Mr. Chichande is, in fact, the average participant. But even if he weren't the average participant, I don't know that I could say that he would be substantially less culpable than the average participant.

Without the minor role reduction, Chichande's total offense level was 40.  Based on his criminal history category I, the resulting Guidelines range was 292 to 365 months.  *See* U.S.S.G. Sentencing Table.  The district court ultimately imposed a 180-month sentence as to each count, to run concurrently.  Taking a belt-and-suspenders approach, the district court also calculated Chichande's sentence with a minor role reduction and determined that a 180-month sentence would still be appropriate even with the minor role reduction.[6]

Chichande raises two issues on appeal: (1) whether the district court erred in denying the minor role reduction; and (2) whether we should vacate and remand his sentence because he is eligible for the retroactive zero-point offender reduction.  We affirm the district court's denial of the minor role reduction, and we decline to vacate and remand for resentencing.

---

[6] With the minor role reduction, Chichande's total offense level would drop to 34.  An offense level of 34 with a criminal history category I would yield a Guidelines range of 151 to 188 months.  *See* U.S.S.G. Sentencing Table.

## II

"[W]e review the district court's identification of the relevant legal standard de novo, its factual findings for clear error, and its application of the legal standard to the facts for abuse of discretion." *Dominguez-Caicedo*, 40 F.4th at 960. Factual findings are clearly erroneous if they are illogical, implausible, or without support in the record. *United States v. Hinkson*, 585 F.3d 1247, 1262 (9th Cir. 2009) (en banc), *cert. denied*, 563 U.S. 936 (2011). "A district court abuses its discretion when it applies the wrong legal standard or when its findings of fact or its application of law to fact are 'illogical, implausible, or without support in inferences that may be drawn from the record.'" *Glick v. Edwards*, 803 F.3d 505, 508 (9th Cir. 2015) (quoting *Hinkson*, 585 F.3d at 1262), *cert. denied*, 580 U.S. 861 (2016).[7]

## III

### A

Because it appears that the district court may have believed that our precedent *requires* a sentencing court to calculate an average level of culpability with mathematical certitude, we first clarify that our precedent contains no such

---

[7] While the parties do not raise the issue, there may be a split of authority over whether a district court's minor role determination is reviewed for clear error or abuse of discretion. *Compare Dominguez-Caicedo*, 40 F.4th at 965–66 (holding that the district court did not "abuse[] its discretion" in denying the minor role reduction), *with United States v. Rosas*, 615 F.3d 1058, 1066 (9th Cir. 2010) ("The district court's determination about whether a defendant was engaged in a mitigating role is . . . reviewed for clear error."), *as amended*; *see also United States v. Bell*, No. 22-10262, 2024 WL 859942, at *3 n.1 (9th Cir. Feb. 29, 2024) (noting the possible split). We need not decide which standard applies because Chichande's challenge fails under either standard.

requirement.  We then explain why the district court did not
err in denying the minor role reduction.

**1**

To be eligible for a minor role reduction, a defendant
must prove "by a preponderance of the evidence," *United
States v. Rosas*, 615 F.3d 1058, 1067 (9th Cir. 2010), that he
was "substantially less culpable than the average participant
in the criminal activity," U.S.S.G. § 3B1.2 cmt. 3(A).  To
determine whether a defendant has met his burden, we
established a three-part test in *Dominguez-Caicedo*:

> First, the court must identify all of the
> individuals for whom there is "sufficient
> evidence of their existence and participation
> in the overall scheme."  Second, the court
> must calculate a rough average level of
> culpability for these individuals, taking into
> consideration the five factors in comment
> 3(C) to the Mitigating Role Guideline.  Third,
> the court must compare the defendant's
> culpability to that average.  If the defendant
> is substantially less culpable than that
> average and meets the other criteria, he
> should be granted a mitigating role
> adjustment.    If the defendant is not
> substantially less culpable than that average,
> he is not eligible for the adjustment.

40 F.4th at 960 (citations omitted).

We did *not* hold in *Dominguez-Caicedo* that a sentencing
court must engage in a precise, numerical calculation in
conducting the three-step analysis.  Indeed, we stated that
"the court must calculate a *rough* average level of

culpability." *Id.* (emphasis added). This language is itself inconsistent with a mathematically precise calculation or analysis. We also stated that the court needed to consider the five factors, which by their express language do not require numerical values. The five factors require the court to assess the "degree" to which the defendant engaged in certain conduct bearing on culpability. U.S.S.G. § 3B1.2 cmt. 3(C); *see also United States v. Rodriguez*, 44 F.4th 1229, 1234 (9th Cir. 2022) ("[T]he commentary instructs courts to analyze the *degree* to which each factor applies . . . ."). Assessing the degree of the factors does not require numerical quantification. For example, the "degree" or "measure" of a factor could be expressed in non-numerical terms such as high, medium, or low. *See Degree*, Merriam-Webster, https://perma.cc/NAJ9-MZW2 ("Degree" means an "extent, measure, or scope of an action, condition, or relation."). We see nothing in the Mitigating Role Guideline that requires a court to perform a mathematical calculation by assigning numerical values to any of the five factors. Rather, the Mitigating Role Guideline's commentary instructs that "[t]he determination whether to apply [a mitigating role adjustment], is based on the totality of the circumstances and involves a determination that is heavily dependent upon the facts of the particular case." U.S.S.G. § 3B1.2 cmt. 3(C).

We did state in *Dominguez-Caicedo* that the Mitigating Role Guideline's commentary refers to the "average participant," which means the "mathematical average, *i.e.*, a 'single value that represents the midpoint of a broad sample of subjects.'" 40 F.4th at 960 (quoting *Average*, *Black's Law Dictionary* (11th ed. 2019)). But in context, the point of that statement was to clarify that the Guideline requires a court to consider "*all* likely participants in the criminal scheme."

*Id.* (quoting *United States v. Diaz*, 884 F.3d 911, 916 (9th Cir. 2018)). *Dominguez-Caicedo* explained that some district courts had misinterpreted our decision in *United States v. Hurtado*, 760 F.3d 1065, 1069 (9th Cir. 2014), to require that they disregard participants with above-average culpability and also disregard participants with below-average culpability. *Dominguez-Caicedo*, 40 F.4th at 960–61. *Dominguez-Caicedo* explained that courts following this approach incorrectly compare the defendant's culpability to the *median*, rather than the *average*. *Id.* Our use of the phrase "mathematical average" merely emphasized that the sentencing court's task is to compare the defendant's culpability to the average level of culpability of all participants in the crime rather than to the median. Further, other than that sole and cursory reference to a "mathematical average," nothing else in *Dominguez-Caicedo* suggests that the court must perform a mathematical calculation. Our conclusion is reinforced by the fact that the Mitigating Role Guideline itself does not require the five factors to be quantified numerically, as discussed above.

*Rodriguez* also does not require a court to conduct a mathematical calculation. In *Rodriguez*, we repeated *Dominguez-Caicedo*'s reference to "the mathematical average." 44 F.4th at 1234. But again, we did so to stress that all likely participants must be included in the comparative analysis, not to suggest that the court must conduct a numerical calculation in analyzing the five factors and conducting the comparative analysis. *Id.* Further, in *Rodriguez*, we reviewed the district court's analysis of certain disputed factors, and we nowhere suggested that the district court had to quantify each factor with a numerical value. *Id.* at 1235–37. Instead, we stated that the district

court must analyze the "degree" to which each factor applies. *Id.* at 1234.

In sum, our precedent does not require a district court to use a mathematical calculation in conducting *Dominguez-Caicedo*'s three-part test. Rather, our case law and the Mitigating Role Guideline's commentary direct that the court analyze the *degree* to which each factor applies to each of the participants in the defendant's crime. U.S.S.G. § 3B1.2 cmt. 3(C). This means that a court must assess the extent to which each factor applies to each participant in determining the rough average level of culpability, but it need not do so with numerical values or mathematical certitude.

**2**

In adopting the government's analysis at the resentencing hearing, the district court applied the correct legal standard. The court identified all the individuals for which there was sufficient evidence of their existence and participation in Chichande's crimes. It then calculated a "rough average level of culpability" for all those individuals using the five factors. *Dominguez-Caicedo*, 40 F.4th at 960. Finally, the court compared Chichande's culpability to that rough average and determined that Chichande represented the average participant and, at the very least, was not substantially less culpable than the average participant.

The district court's conclusion that Chichande represented the average participant or, at the very least, was not substantially less culpable than the average participant, was logical and supported by the facts in and inferences that could be drawn from the record. The court reasonably concluded that the owner and recruiter had high or mid-high culpability levels based on the five factors. Chichande does

not argue otherwise.  On the other end of the spectrum were the driver and security guards, whom the district court reasonably concluded had lower levels of culpability, given the lack of evidence suggesting that they were more than ancillary participants.  The district court then reasonably concluded that Chichande and his co-defendants fell in the middle of the culpability spectrum based on the five factors and thus represented the average participant or, at the very least, were not substantially less culpable than the average participant.

While Chichande *may* have had minimal understanding of the scope of the organization and little participation in the planning, the district court reasonably concluded that Chichande's assertions that he had absolutely no understanding of the scope and no participation in the planning were not credible.  Moreover, the evidence and reasonable inferences drawn therefrom support a higher degree of culpability for Chichande on the remaining three factors.  As the district court reasonably found, Chichande had at least moderate decision-making authority because he, along with his co-defendants, was in charge of driving the boat far from direct control by others and threw the drugs overboard despite the contrary instructions they had been given.  The court also reasonably found that Chichande had a greater degree of culpability given the nature and extent of his participation in the crimes.  He provided a specialized skill; he was entrusted to pilot $28 million of cocaine on a week-long journey; and he, with his co-defendants, decided to throw the cocaine overboard with an attached GPS buoy.[8]

---

[8] Chichande objects to some of the district court's findings.  For example, he argues that he had no decision-making authority because he and his

Finally, the record supports that the last factor weighed against Chichande, as he would have been paid $38,000—more than six times his annual salary—for a one-week trip.[9]

---

co-defendants were "under surveillance of some sort every step of the way," and that he "had no influence over any of the decision-making." These conclusory statements, however, fail to show how the district court's findings were clearly erroneous. The district court reasonably did not credit Chichande's version and thus was not required to accept these assertions. Chichande has not persuasively explained why the district court's credibility finding was clearly erroneous.

[9] In *Rodriguez*, we explained that "[t]o properly apply this [fifth] factor . . . the district court must consider whether the defendant has a 'proprietary interest in the criminal activity,' such as 'an ownership interest or other stake in the outcome of the trafficking operation.'" 44 F.4th at 1237 (quoting *United States v. Diaz*, 884 F.3d 911, 917–18 (9th Cir. 2018)); *see also* U.S.S.G. § 3B1.2 cmt. 3(C) ("[A] defendant who does not have a proprietary interest in the criminal activity and who is simply being paid to perform certain tasks should be considered for an adjustment under this guideline."). In making that determination, we noted that the district court in *Rodriguez* should have considered whether the defendant "was to be paid a fixed amount to perform a discrete task," whether the defendant "ha[d] a proprietary interest in the drugs," and whether the "amount he was to be paid was relatively modest compared to the value of the drugs." *Rodriguez*, 44 F.4th at 1237. Chichande suggested below that at least some of these considerations should weigh in favor of finding that he had no stake in the outcome of the trafficking operation. But, again, the district court reasonably did not believe Chichande's version of the facts and thus was not required to accept these assertions.

We also reject Chichande's argument that the district court improperly observed that $38,000 was "a lot of money in South America where the defendant is from," as such observation was supported by the record showing that Chichande's earnings before his arrest were substantially less than $38,000. And we reject Chichande's contention that the district court improperly compared his expected payment to that of non-participants, as such contention is belied by the record.

Chichande argues that the district court erred by requiring him to present evidence showing the degree to which each of the five factors applies to the other participants.  There was no error because it was *Chichande's* burden to demonstrate that he qualified for the reduction. *See Rosas*, 615 F.3d at 1067.

Chichande's arguments that the district court erred in considering the amount of drugs he piloted are similarly unavailing.  The Mitigating Role Guideline's commentary instructs the court to consider the "nature and extent" of the defendant's acts, which reasonably includes the amount of drugs the defendant piloted.  U.S.S.G. § 3B1.2 cmt. 3(C)(iv). Thus, the quantity of drugs Chichande piloted was relevant. He also argues that considering the amount of drugs he piloted in denying the minor role reduction resulted in improper double counting because drug quantity is already considered in determining his offense level under U.S.S.G. § 2D1.1(a)(5).  We see no improper double-counting issue because the minor role reduction is a "sentencing benefit which a defendant may be entitled to receive," and so "[t]he fact that a defendant may fail to receive the reduction does not result in an additional enhancement." *Rosas*, 615 F.3d at 1065 (quotation mark omitted) (quoting *United States v. Rutledge*, 28 F.3d 998, 1004 (9th Cir. 1994)) (holding that the denial of a reduction for acceptance of responsibility based on the defendant's failure to appear did not constitute double counting when the defendant's failure to appear was also the basis for two enhancements).

## B

In November 2023 (after Chichande's resentencing), the Sentencing Commission adopted Amendment 821, which provides for a two offense-level reduction for certain

defendants with zero criminal history points. *See* U.S.S.G. Supp. App. C, amend. No. 821, part B, subpart 1, at 236–37 (2023) (adding U.S.S.G. § 4C1.1 to provide for a two-level decrease in the offense level for certain zero-point offenders). The reduction may be applied retroactively. *See* U.S.S.G. § 1B1.10(d).

Chichande may be entitled to a sentence modification based on the zero-point offender reduction. But we agree with the government that a remand is unnecessary because the Southern District of California has established a protocol for implementing the retroactive zero-point offender reduction. *See* S.D. Cal. General Order 755, *District Protocol for Processing Applications Under Guidelines Amendment 821*, at 4(a) (October 26, 2023), https://perma.cc/Q29M-GRCA. Chichande does not dispute that he could seek relief by following the protocol, and we see no prejudice in requiring him to follow the protocol.

## IV

For the reasons above, we affirm the denial of the minor role reduction. We also decline to vacate and remand for resentencing based on the retroactive zero-point offender reduction.

**AFFIRMED.**